# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

STEPHEN TANNER HANSEN, *et al.*,

    Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *et al.*,

    Defendants.

Case No. 2:10-CV-01434-KJD-RJJ

**ORDER**

Before the Court is Defendant State Farm Fire's Motion for Summary Judgment (#20). Plaintiffs Stephen Tanner Hansen and Clark LeFever have filed an opposition[1] (#37) to which State Farm Fire has filed a reply (#46).

I.  Background

Ernest Sunderlin Aguilar ("Ernest") and his son Brad were covered under an automobile policy issued by State Farm Auto and a homeowner's insurance policy issued by State Farm Fire (the

---

[1] Plaintiffs' opposition is 48 pages long.  Pursuant to Local Rule 7-4, oppositions are limited to 30 pages. Plaintiffs' counsel is reminded that disregard of the local rules of practice wastes judicial resources and prejudices those parties who follow the rules.

1  "Policy"). In July 2003, Plaintiff Stephen Tanner Hansen ("Tanner") attended a party where Brad
2  was also a guest. Tanner and two friends – Craig LeFever and Joe Grill – decided to leave the party
3  because they felt uncomfortable. The three friends attempted to leave in a pickup truck owned by
4  Craig's father, Plaintiff Clark LeFever. As they attempted to exit the driveway, partygoers blocked
5  the vehicle's path. An altercation ensued and Craig was struck several times. Craig drove the truck
6  away from the party to the gate of the subdivision and Brad followed in a jeep. While the truck was
7  stopped at the gate, the jeep driven by Brad struck the truck from the rear. As Craig drove through
8  the gate, the truck he was driving was showered with bottles, cans, and rocks. Tanner received
9  serious injuries from a rock that smashed through the window. Craig and Joe were also injured.
10 Brad allegedly continued to pursue the truck with his jeep.

11      This event formed the basis of a state court lawsuit (the "Underlying Action") which was
12 filed on December 30, 2004. The three victims of the attack and their parents were plaintiffs in the
13 Underlying Action and the defendants were twelve alleged members of a group known as the "311
14 Boyz," including Brad, and several property owners. The complaint in the Underlying Action
15 asserted causes of action against Brad for negligence, emotional distress, false imprisonment, assault,
16 battery, civil conspiracy, concert of action, and Nevada RICO.

17      State Farm Auto and Allstate Insurance defended Brad in the Underlying Action. State Farm
18 Fire denied coverage to Brad based on exclusions in the State Farm Fire Policy. During discovery,
19 Brad admitted that he struck Plaintiff LeFever's vehicle, but claimed that it was accidental. Since
20 Brad admitted striking LeFever's truck with his jeep, Plaintiff Hansen moved for partial summary
21 judgment against Brad on the issue of negligence. A stipulation for entry of judgment was filed in
22 the Underlying Action and Judgment was entered in favor of Plaintiffs against Brad for $176,000 on
23 the negligence and negligence per se claims ("the Confessed Judgment"). Brad also signed an
24 assignment of all his rights against State Farm Fire in favor of Plaintiffs, including his claims for
25 breach of contract and bad faith.
26

1    Plaintiffs filed this lawsuit based on the claims assigned to them as part of their settlement
2 with Brad.  Plaintiffs assert claims against State Farm Fire and State Farm Auto for breach of
3 contract, breach of the covenant of good faith and fair dealing, violation of Nevada Unfair Claims
4 Practices Act, and declaratory relief.
5    The State Farm Fire Policy provides in relevant part :

**Section II – Personal Liability Coverages**
Coverage L Personal Liability
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage ... caused by an occurrence we will:
   1. pay up to our limit of liability for damages for which the insured is legally liable; and
   2. provide a defense at our expense...

Under Section II – Exclusions, the State Farm Fire Policy provides:

   1. Coverage L ... (does) not apply to ...
      a. bodily injury or property damage:
         (1) which is either expected or intended by the insured; or
         (2) which is the result of willful and malicious acts of the insured.
            *****
      e. bodily injury or property damage arising out of the ownership, maintenance, use, loading, or unloading of:
            *****
         (2) a motor vehicle owned or operated by or rented or loaned to an insured.

II.  Discussion

   A.  Legal Standard For Summary Judgment

   Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See, Fed. R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See, Celotex, 477 U.S. at 323.

   The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a).  "[U]ncorroborated and self-serving testimony," without more, will

1  not create a "genuine issue" of material fact precluding summary judgment. <u>Villiarimo v. Aloha
2  Island Air Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a
3  party who fails to make a showing sufficient to establish the existence of an element essential to that
4  party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.
5    Where there is no issue of fact to be determined, and the only issue to be determined is the
6  application of the undisputed facts to the subject insurance policy, the interpretation of the policy is a
7  question of law. <u>Washoe Cnty v. Transcontinental Ins. Co.</u>, 110 Nev. 798 (1994); <u>Grand Hotel Gift
8  Shop v. Granite State Ins. Co.</u>, 108 Nev. 811, 839 (1992); <u>Nationwide Mutual Ins. Co. v. Moya</u>, 108
9  Nev. 578 (1992). An insurance contract that is valid, enforceable, and unambiguous must be
10 construed and enforced as it is plainly written. See <u>Farmers Ins. Exchange v. Young</u>, 108 Nev. 328
11 (1992).

12   B.  Obligations Under Nevada Law

13   "An insurance policy is to be judged from the perspective of one not trained in law or in
14 insurance, with the terms of the contract viewed in their plain, ordinary and popular sense."
15 <u>Siggelkow v. Phoenix Ins. Co.</u>, 109 Nev. 42, 846 P.2d 303, 304 (1993).  Ambiguous terms in an
16 insurance policy will be construed in favor of the insured and against the insurer.  See <u>Harvey's
17 Wagon Wheel, Inc. v. MacSween</u>, 96 Nev. 215, 606 P.2d 1095, 1098 (1980).  On the other hand,
18 when contract language is clear and unambiguous, a court cannot, under the guise of interpretation,
19 distort the plain meaning of the contract. See <u>Watson v. Watson</u>, 95 Nev. 495, 596 P.2d 507, 508
20 (1979).  Accordingly, Nevada courts will enforce unambiguous policy provisions that exclude
21 coverage. See <u>Senteney v. Fire Ins. Exch.</u>, 101 Nev. 654, 707 P.2d 1149, 1150 (1985). Any attempt
22 to restrict insurance coverage must be done clearly and explicitly. See <u>Sullivan v. Dairyland Ins. Co.</u>,
23 98 Nev. 364, 649 P.2d 1357, 1358 (1982). In particular, an insurer, wishing to restrict the coverage of
24 a policy, should employ language which clearly and distinctly communicates to the insured the nature
25 of the limitation. See <u>National Union Fire Ins. v. Reno's Exec. Air</u>, 100 Nev. 360, 682 P.2d 1380,
26 1382.

An insurance company's duty to defend its insured arises from the provisions of the insurance policy. See Rockwood Ins. Co. v. Federated Capital Corp., 694 F.Supp. 772, 776 (D.Nev.1988). "The insurer must defend any lawsuit brought against its insured which potentially seeks damages within the coverage of the policy." Id.(1984).  Although the duty to defend is more broad than the duty to indemnify, the Nevada Supreme Court has made clear that there is no duty to defend where there is no potential for coverage.  United National Insurance Co. v. Frontier Insurance Co., 120 Nev. 678, 687 (Nev.2004) ("Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy").  If the insurance policy properly construed precludes a duty to indemnify there is no duty to defend.  Rockwood Ins. Co. v. Federated Capital Corp., 694 F.Supp. 772, 776 (D.Nev. 1988).

C. Motor Vehicle Exclusion

Nevada courts have upheld automobile exclusions in homeowners policies like the one at issue here where the policy language "clearly and unambiguously excludes coverage for losses arising out of the automobile accident."  Vitale v. Jefferson Ins. Co. of New York,  116 Nev. 590, 595, 5 P.3d 1054, 1058 (Nev. 2000); see also Senteney v. Fire Insurance Exchange, 101 Nev. 654, 656, 707 P.2d 1149, 1150 (1985).

The language of the Policy is unambiguous in excluding coverage for "bodily injury or property damage arising out of the ownership, maintenance, use, loading, or unloading of ... a motor vehicle owned or operated by or rented or loaned to an insured."  There does not appear to be a dispute about the basic facts surrounding Brad's involvement.  Both parties agree that Brad pursued Tanner, Craig, and Joe to the gate where Brad's jeep collied with the truck driven by Craig and that this collision did not result in any physical injury to Tanner, Craig, or Joe.  Both parties agree that after Craig drove the truck through the gate, persons other than Brad threw objects which resulted in injuries to Tanner, Craig, and Joe.

The dispute between the parties is whether Brad's actions arose out of his use of the vehicle, which would exclude Policy coverage and relieve State Farm Fire of its duty to defend.  State Farm

Fire claims that the allegations of the complaint show that Brad's conduct was entirely related to his use of the vehicle. Specifically, State Farm Fire argues that "the injuries at issue were caused because Plaintiffs were scared and were fleeing the scene as they were being chased by other vehicles, allegedly including the vehicle driven by Brad." (Reply at 12.) Plaintiffs argue that "Brad's negligent conduct in relation to bodily injuries complained of did not involve the operation of the vehicle" but instead arose from Brad's "general negligence in his membership in and association with the 311 Boyz, as it relates to the events of July 18, 2003 and other prior events, and Brad Aguilar's participation in and refusal to extricate himself from those events or to assist the Plaintiff(s) in any manner by attempting to cool things off." (Opp. at 25, 26.)

Plaintiffs have failed to provide any facts that demonstrate negligent conduct by Brad independent of his use of a motor vehicle. Any negligence or negligent infliction of emotional distress claims that could be asserted against Brad arise from his use of a vehicle. Where, as here, claims against an insured arise out of and are causally connected to excluded conduct, an insured is not covered and an insurer has no duty to defend. Versatility, Inc. v. Capitol Indem. Corp., 2011 WL 3444187, 3 (D.Nev. 2011) (holding that insurer had no duty to defend where policy excluded coverage for assault and battery and negligence and emotional distress claims arose out of allegations of assault and battery). Any negligent actions Brad took that led to the victim's injuries took place from behind the wheel of his jeep. Accordingly, the clear and unambiguous terms of the State Farm Fire Policy exclude coverage and State Farm Fire was under no obligation to defend Brad for negligence or negligent infliction of emotional distress.

//
//
//
//
//
//

6

D. Exclusions Covering Other Claims

The policy only covers "occurrences." The Policy defines "occurrence" as "an accident." According to Nevada courts an accident is "a happening that is not expected foreseen, or intended." Beckwith v. State Farm Fire and Casualty, Co., 120 Nev. 23, 26 (2004). Similarly, the policy excludes bodily injury or property damage which is "either expected or intended by the insured or which is the result of willful and malicious acts of the insured."

The remaining claims against Brad in the Underlying Complaint – intentional infliction of emotional distress, civil false imprisonment, assault, battery, civil conspiracy/concert of action, and violations of Nevada RICO – all require intent or willful conduct. Plaintiffs claim that Brad "had no way of knowing" that the acts that caused the victims' injuries would have occurred and that "there was and could not have been harm inherent in the conduct of Brad Aguilar because his liability in this matter is vicarious liability[2] ... he did not directly engage in the actual conduct of throwing rocks and bottles, the cause of the injuries at issue." (Oppo. at 46.)  According to Plaintiffs, even though Brad lacked intent, State Farm Fire had a duty to defend Brad on these causes of action because he was a member of the group and remained present rather than leaving or attempting to stop the conduct, and thus "is liable for the acts and/or conduct of the group" under a theory of civil conspiracy. (Id.)

Civil conspiracy in Nevada "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., Inc., 114 Nev. 1304, 1311 (Nev.,1998).  Plaintiffs seek to selectively use the liability mechanism of civil conspiracy to hold Brad responsible as a cause of the injuries, without triggering the Policy's exclusion of intentional conduct.  This attempt fails.  It is fundamentally inconsistent for Plaintiffs to

---

[2] As noted by State Farm Fire, Plaintiffs misuse the term "vicarious liability."  Vicarious liability applies where a supervisor (such as an employer) is responsible for the actions of a subordinate based on the relationship between the parties.  See *Black's Law Dictionary* 998 (9th ed. 2009).

7

claim that "there was and could not have been harm inherent in the conduct of Brad Aguilar" at the same time as claiming that Brad is liable for the actions of others based on civil conspiracy. If his conduct in relation to the group was unintentional, as Plaintiffs argue, there is no civil conspiracy liability for the injuries that resulted from the actions of others.[3]

E. Waiver/Estoppel

Plaintiffs argue that State Farm Fire waived its right to assert any affirmative defense regarding denial of coverage to Brad because it made a payment of $5,100 to Plaintiffs on behalf of Ernest Aguilar. This argument is without merit because the denial of coverage at issue in this Motion is only in relation to Brad. Accordingly, there is no waiver or estoppel.

F. Damages for Failure to Defend

State Farm Fire argues that it cannot be held liable for breach of contract or bad faith because Brad has not suffered damages, having received a defense in the Underlying Action pursuant to State Farm Auto policy and a policy issued by Allstate insurance.

Recovery for breach of contract and breach of the covenant of good faith and fair dealing require a showing of damages resulting from the breach. California courts have held that where an insured is fully defended under another insurance policy, "failure to defend [is] of no consequence" to the insured. Ceresino v. Fire Ins. Exchange, 215 Cal.App.3d 814, 823 (Cal. Ct. App. 1989); see also Emerald Bay Community Assn. v. Golden Eagle Ins, Corp., 130 Cal.App.4th 1078, 1093 (Cal. Ct. App. 2005)(where one insurer fully protects the insured by providing a defense and full coverage for a claim, a second insurer's refusal to defend generally cannot support a tort action for breach of the covenant of good faith and fair dealing because the latter's conduct will not enchance the insured's cost of defending itself or its exposure to liability.); Ringler Associates Inc. v. Maryland

---

[3] Plaintiffs contend that Brad "did not directly engage in the actual conduct of throwing rocks and bottles, the cause of the injuries at issue." Since there is no conspiratorial liability, there is no dispute that Brad's only involvement was connected to his use of the vehicle. The vehicle exclusion provision as discussed *supra* provides an additional basis for denying coverage.

Casualty Co., 80 Cal.App.4th 1165 (Cal. Ct. App. 2000) (no damages where alleged breach of duty to defend did not enhance liability or increase costs incurred in defense of lawsuit).

Plaintiffs fail to provide anything other than a conclusory opposition to this argument. See Local Rule 7-2. Although this argument appears to have merit, since other grounds for granting the Motion for Summary Judgment exist, the Court declines to apply California law in this case.

G. Bad Faith Claim

When there is a genuine dispute regarding an insurer's legal obligations, the district court can determine if the insurer's actions were reasonable. Allstate Ins. Co. v. Miller, 125 Nev. 300, 317 (Nev. 2009). Insurers are not liable for bad faith for "being incorrect about policy coverage as long as the insurer had a reasonable basis to take the position that it did." Pioneer Chlor Alkali Co., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 863 F.Supp. 1237, 1242 (D.Nev. 1994).

State Farm Fire argues that its actions in denying coverage under the Policy were reasonable and did not constitute bad faith. Further, State Farm Fire argues that the Court can make this determination as a matter of law. Again, Plaintiffs have failed to provide any points or authorities in opposition to this argument. The argument has merit and forms an additional basis for summary judgment on the bad faith claim.

III.  Request for Continuance

In their opposition, Plaintiffs state several times that Fed. R. Civ. P. 56(f) permits courts to allow additional discovery prior to granting a motion for summary judgment and request that "[a]t minimum, the Plaintiff should be provided with an opportunity to conduct discovery before the Court makes a final decision as to summary judgment." (Opp. at 47.) Plaintiffs fail to address the requirements of Rule 56(d) which also plainly states that the nonmovant seeking additional discovery must present specific facts by affidavit or declaration explaining why it lacks the facts necessary to oppose the motion. Plaintiffs have not provided the required affidavit. Accordingly, the request is denied.

III. Conclusion

**IT IS HEREBY ORDERED THAT** Defendant State Farm Fire's Motion for Summary Judgment (#20) is **GRANTED**.

DATED this 23rd day of March 2012.

_____
Kent J. Dawson
United States District Judge