UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEPHEN TANNER HANSEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 2:10-cv-01434-MMD-RJJ<br><br>ORDER<br><br>(State Farm Auto's Motion for Summary Judgment – dkt. no. 40) |

Before the Court is Defendant State Farm Auto's ("SFA") Motion for Summary Judgment. (Dkt. no. 40.) For the reasons stated below, the Motion is denied.

**I.      BACKGROUND**

This case concerns an assignment of rights belonging to an insured against an insurance company. The original lawsuit involving the parties to this case was filed in state court in late 2004. Below is a summary of the facts pertinent to this Motion.

**A.      The Incident Giving Rise to the Original Lawsuit**

On July 18, 2003, Plaintiff Stephen Hansen and two friends, Craig LeFevre and Joe Grill, attended a party in the suburbs of Las Vegas, Nevada. Members of a local gang called the "311 Boyz," including assignor Brad Aguilar, were at the party. Hansen, LeFevre, and Grill felt uncomfortable and decided to leave the party, but were prevented from doing so because several individuals were sitting on or standing behind Craig's vehicle. At this point, a partygoer named Matt Costello hit Craig several times. The

teens eventually drove away from the party towards the gated portion of the subdivision. Brad Aguilar followed Craig's car in Brad's jeep. While stopped at the gate, Craig's vehicle was hit from behind by Brad, who was in the insured vehicle.

After Craig, Grill, and Hansen exited the security gate and as Craig was attempting to drive away, his vehicle was showered with rocks, bottles, and cans, allegedly hurled by individuals from the party. Craig and Grill suffered minor injuries. Hansen suffered severe and permanent injuries when he was struck by a large rock that crashed through the windshield of Craig's car during the incident. Hansen has undergone multiple surgeries and remains in need of future medical treatment.

### B. The State Court Action and State Farm Auto's Defense[1]

The "311 Boyz" incident formed the basis of a state court action filed by Hansen, Craig, Grill, and their respective parents on December 30, 2004. Defendants included twelve alleged members of the 311 Boyz, one of which was Brad Aguilar. The complaint alleged liability under a theory of negligence as well as intentional behavior, including assault, battery, false imprisonment, conspiracy, and RICO. (*See* dkt. no. 43, ex. 2.) The plaintiffs sought several forms of relief, including punitive damages. (*Id.*)

On or about September 23, 2005, SFA received a demand to defend or indemnify Brad Aguilar. The demand was sent by attorney Dennis Prince, counsel for Brad's mother, who was insured under an Allstate homeowner's insurance policy. On November 9, 2005, SFA agreed to defend Brad under a reservation of rights. Attorney Riley Clayton from Hall, Jaffe, and Clayton ("HJC") was retained as counsel for Brad. The reservation of rights letter specifically reserved the right to deny coverage for liability falling outside the Aguilars' insurance policy, including "occurrence" and "intentional acts"

---

[1] The Court omits certain facts regarding the Aguilars' and Plaintiffs' attempts to recover from State Farm Fire ("SFF"). At several points during the state court litigation the Aguilars and/or Plaintiffs requested that SFF defend the action. On each occasion SFF denied Brad coverage, although it provided Ernest coverage under a reservation of rights in 2007.

2

exclusions.[2]  (Dkt. no. 41 at 28-30.)  In the letter, SFA also denied coverage for punitive damages.[3]  (*Id.*)

Brad also requested defense and indemnification from his parents' homeowner insurer, State Farm Fire ("SFF"), but SFF informed Brad that the homeowner's policy did not require it to defend or indemnify him.

On December 15, 2005, the parties participated in mediation.  SFA proffered a settlement offer of $7,500.  The plaintiffs did not accept the offer.

In March 2006, Ernest Aguilar, Brad's father, was added to the lawsuit in the second amended complaint.  SFA accepted Ernest's defense under a reservation of rights and provided him with counsel from HJC.  Ernest also tendered a request to defend or indemnify to SFF.  SFF initially declined to defend or indemnify Ernest, but on February 5, 2007, SFF agreed to defend Ernest subject to a reservation of rights.

During discovery, Brad admitted that he struck LeFevre's vehicle, but claimed that it was accidental.  He denied intentional wrongdoing.  Because Brad admitted striking LeFevre's vehicle, plaintiffs moved for summary judgment on the negligence claim.  On May 12, 2006, the state court entered summary judgment in favor of Hansen against Brad on the negligence claim, holding that Brad breached a duty of care owed to plaintiffs with respect to the incident at the gate.

---

[2]The letter reads, in relevant part: "We wish to call your attention to the fact that we specifically reserve our right to deny you and anyone claiming coverage under the policy, for the following reason(s): . . . It is questionable whether the bodily injury or property damage was caused by an intentional act." (Dkt. no. 41 at 28.)

[3] The reservation of rights letter also included the following language:

> Because of [the reservation of rights and the] fact that the amount claimed against you for general damages in this suit is not specified, any judgment against you could be in excess of the protection afforded by this policy and there may be a personal liability for damages on your part. In view of your possible personal liability, it will be agreeable with the Company for you, if you elect, to employ attorneys of your own choosing, at your own expense, to represent you personally and to appear in this matter, in addition to the law firm we have selected and will compensate.

On May 30, 2006, the plaintiffs sent a demand letter to the Aguilar's attorneys for $125,000. This represented Brad and Ernest's total State Farm policy limits – $100,000 in homeowner's insurance and $25,000 in automobile insurance. On July 10, 2006, SFA offered $25,000 to Hansen and $25,000 to plaintiffs Grill and Lefevre, to be apportioned equally between them.[4] Grill and Lefevre accepted the offer but Hansen rejected it.

On August 9, 2006, Hansen served an Offer of Judgment on Ernest for $49,000 and an Offer of Judgment on Brad for $124,000. Because the two offers created a conflict of interest between Brad and Ernest with respect to settlement, SFA retained Gina Winsepar to assist Brad in discussing the offers and Susan Sherrod to assist Ernest. On Sherrod's recommendation, Ernest retained attorney David Sampson as personal counsel for himself and his son.

On August 26, 2008, Brad and Ernest signed two separate settlement agreements to the following effect:

- Brad assigned his rights against SFA in favor of Hansen and LeFevre
- Brad's assignment acknowledged that a judgment of $176,000 had been entered against him in favor of Hansen and LeFevre on the claims of "negligence" and "negligence per se."
- Brad assigned all breach of contract and bad faith claims which he held to Hansen and Lefevre
- Ernest assigned his rights against SFA in favor of Hansen and LeFevre
- Ernest's assignment acknowledged that a judgment of $176,000 had been entered against him in favor of Hansen and LeFevre on the claims of "negligence" and "negligence per se."
- Ernest assigned all breach of contract and bad faith claims which he held to Hansen and Lefevre

On October 16, 2008, two Stipulations for Entry of Judgment were filed in state court in the sum of $176,000 on plaintiffs' negligence and negligence per se claims, one for their claims against Brad and one for their claims against Ernest.

///

---

[4] It is unclear to the Court whether the parties represent that the auto insurance policy allowed for one or two (one amount for Ernest and one for Brad) payouts of $25,000. This issue, however, is not relevant for the purposes of the disposition of this Motion.

1    SFA maintains that it did not consent to the settlement, stipulated judgments, or
2 the assignment of rights that Brad and Ernest entered into with Plaintiffs.  Rather,
3 Defendant cites to several portions of the insurance policy which prohibited Brad and
4 Ernest from entering into the settlement agreement:

**Reporting a Claim – Insured's Duties**
    **5.   Insured's Duty to Co-operate with us**
        Insured shall co-operate with us and, when asked, assist us in:
        (a) making settlements . . .
        The insured shall not, except at his or her own cost, voluntarily,
        (a) make any payment or assume any obligation to others . . .

**Conditions**
    **2.   Suits Against Us.**
        There is no right of action against us:
        (a) until all the terms of this policy have been met, and
        (b) under the liability coverage, until the amount of damages an insured is legally liable to pay has been finally determined by
            (1) judgment after actual trial and appeal, if any; or
            (2) agreement between the insured, the claimant, and us.

### C.    The Present Action

14    Hansen and LeFevre filed this lawsuit on August 26, 2009, alleging breach of
15 contract, contractual and/or tortious breach of the implied covenant of good faith and fair
16 dealing, violation of the Nevada Unfair Claims Practices Act, and declaratory relief
17 against SFA and SFF based upon the stipulated judgments and assignment of rights.
18 Defendant SFA now moves for summary judgment on all claims asserted against it.[5]

19    SFA argues that the assignment of rights violated the Aguilars' insurance contract
20 and is therefore void.  Plaintiffs counter that summary judgment is inappropriate because
21 SFA failed to adequately defend the Aguilars as required by the insurance contract,
22 constituting a material breach of the insurance contract.  Plaintiffs argue that therefore,
23 even if the Aguilars subsequently breached the contract through the settlement and

---

[5] Defendant SFF has also moved for summary judgment.  It filed two separate motions for summary judgment. (Dkt. nos. 20, 102.)  The Court granted SFF's motion for summary judgment regarding Plaintiffs' claims against the insurer assigned to them by Brad Aguilar.  (Dkt. no. 101.)  SFF's motion for summary judgment regarding Plaintiffs' claims against the insurer assigned to them by Ernest Aguilar (dkt. no. 102) remains pending before the Court.

assignment of rights, SFA's prior material breach terminated the Aguilars' obligations under the insurance contract.

## II. LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's

requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material,to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### III. WHETHER STATE FARM AUTO BREACHED ITS OBLIGATIONS UNDER THE INSURANCE AGREEMENT

Ordinarily, "the insured [must] . . . cooperate with the insurer. . . . He may not settle with the claimant without breaching the cooperation clause in the policy." *United Servs. Auto. Ass'n v. Morris,* 741 P.2d 246, 250 (Ariz. 1987) (en banc) (citations omitted). However, "[a]ny breach . . . of [the insurer's] duties deprives the insured of the security that he has purchased because the breach leaves him exposed to personal judgment and damage which . . . may exceed the policy limits. Accordingly, when such a breach occurs, the insured is generally held to be freed from his obligations under the cooperation clause." *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 256 (9th Cir. 1991) (citation omitted; brackets in original).

Plaintiffs argue that SFA materially breached the insurance contract and therefore any claims by SFA that the Aguilars breached the cooperation clause or other terms of the contract contract – which would preclude recovery by Plaintiffs – fail.[6]

///

---

[6] SFA acknowledges that insurers who fail to defend their insureds may enter into pre-judgment settlement agreements with third-parties and assign their rights to sue the insurer for bad faith. (Dkt. no. 40 at 23.) However, SFA disputes that it breached its duty to defend here.

7

Plaintiffs assert that SFA breached its contractual duty to defend by (1) pursuing a case strategy that the Aguilars did not agree with; (2) not providing independent counsel when a conflict of interest arose; (3) rejecting the policy limits demand; and (4) failing to hire an accident reconstructionist on the case. (Dkt. no. 54 at 12.) Only arguments one and two contain merit. SFA did not reject the policy demand – rather, all parties agree that at the July 10, 2006, settlement negotiations, SFA accepted the policy limits demand by offering Hansen, Grill, and LeFevre a total of $50,000. And Plaintiffs do not articulate how SFA's failure to hire an accident reconstructionist violates the terms of the agreement.

### A.   Defense Strategy

Plaintiffs argue that SFA breached its duty to defend by pursuing a theory of the case that was adverse to the Aguilars' interests. According to Plaintiffs, SFA and SFF had a joint tactic of arguing that Plaintiffs' injuries resulted from an auto accident, and that this precluded the Aguilars (or their assignees) from obtaining coverage under the $100,000 SFF homeowner's insurance policy. (Dkt. no. 54 at 16.)

"The right and duty to defend affords an insurer the right to control the defense." *Carolina Cas. Ins. Co. v. Bolling, Walter & Gawthrop*, No. S-04-2445FCDPAN, 2005 WL 1367096, at *7 (E.D. Cal. May 31, 2005) *aff'd sub nom. Carolina Cas. Ins. Co. v. Bolling Walter & Gawthrop*, 244 F. App'x 762 (9th Cir. 2007) (citing *Safeco Ins. Co. v. Sup. Court*, 71 Cal. App. 4th 782, 787 (1999) ("When the insurer provides a defense to its insured, the insured has no right to interfere with the insurer's control of the defense . . . ."). For this reason, even if the Aguilars disagreed with Defendants' litigation tactics, SFA did not breach its contractual obligation to defend the Aguilars.

///
///
///
///
///

8

### B. Insured's Right to Independent Counsel

Absent a conflict of interest, the insurer's right to select counsel is encompassed by its contractual right and duty to defend its client.[7]

Plaintiffs cite to *Northern Insurance Co. of New York v. Allied Mutual Insurance Co.*, 955 F.2d 1353, 1359 (9th Cir. 1992) for the proposition that an insurer is required to provide independent counsel for its insured when a conflict of interest between the two arises. This is often referred to as the *Cumis* requirement,[8] and is codified at Cal. Civ. Code § 2860(a).

Here, the parties agree that SFA had a contractual obligation to defend the Aguilars. The auto insurance policy reads:

> We [State Farm Auto] will defend any suit against an *insured* for such damages with attorneys chosen and paid by us.

(Dkt. no. 41 at 59; emphasis in original).

The parties disagree, however, about (1) whether that duty to defend encompasses appointment of independent *Cumis* counsel under Nevada law, and (2) whether the *Cumis* requirement, if applicable in Nevada, was triggered in this case.

### 1. The Requirement of Independent Counsel

#### a. Nevada has not expressly adopted or rejected the requirement.

The parties dispute whether the *Cumis* requirement applies in Nevada. Defendants explain that "[t]he *Cumis* decision was handed down in 1984. California Civil Code § 2860 was adopted in 1987. In the nearly 30 years since the *Cumis* decision, neither the Nevada Supreme Court nor the federal district courts sitting in Nevada ha[ve] adopted or applied the *Cumis* requirement to insureds in Nevada." (Dkt. no. 164 at 12.)

---

[7] Michael M. Marick, Karen M. Dixon, *The Insurer's Contract "Right" to Defend the "Tripartite" Relationship Reconsidered*, 39 Tort Trial & Ins. Prac. L.J. 1119, 1119-1120 (2004).

[8] Its namesake case is *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358, 364 (1984).

It is clear that Defendant is correct that the Nevada Supreme Court has not expressly adopted or applied the *Cumis* holding, nor has the legislature enacted a statute similar to Cal. Civ. Code § 2860. However, SFA's argument is at odds with the Nevada courts' tradition of looking to California law where Nevada law is silent. *See Commercial Standard Ins. Co. v. Tab Constr., Inc.*, 583 P.2d 449, 451 (Nev.1978); *Selfaison v. First Nat. Bank of Ariz.*, No.09-CV-01918, 2011 WL 742212, at *2 (D. Nev. Feb. 24, 2011); *Miller v. Skogg*, No. 2:10-CV-01121, 2011 WL 383948, at *3 (D. Nev. Feb. 3, 2011).

Although Nevada courts have not expressly adopted the *Cumis* requirement, the logic of a 2007 Nevada Supreme Court decision, *Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Court ex. rel.*, 152 P.3d 737, 742-43 (Nev. 2007), is in accord with the reasoning underlying *Cumis*. In *Yellow Cab*, the Court held that counsel previously retained by the insurer to defend a policyholder was disqualified from subsequently representing the policyholder in a bad faith claim against the insurer. *Id.* at 743.

*Yellow Cab*'s reasoning supports the concept that when a conflict of interest between the insurer and the insured arises, it is inappropriate for a single attorney to represent both. *See* 152 P.3d at 741. The *Yellow Cab* Court adopted what it deemed to be the "majority" rule that in the absence of a conflict between the insurer and the insured, "counsel represents both the insured and insurer." 152 P.3d at 742. In upholding the trial court's disqualification, the Court held that:

> while the insured is the primary client, counsel generally learns confidential information from both the insured and the insurer and thus owes both of them a duty to maintain this confidentiality; and, since counsel generally offers legal advice to both the insured and the insurer, counsel owes a duty of care to both. Finally, as most states, including Nevada, have a rule that permits joint representation when no actual conflict is present, courts that have adopted a dual-representation principle in insurance defense cases reason that joint representation is permissible as long as any conflict remains speculative.

*Yellow Cab*, 152 P.3d at 741 (footnotes omitted). The *Yellow Cab* Court also noted that "[o]ne purpose of disqualification is to prevent disclosure of confidential information that could be used to a former client's advantage." *Id.* at 743. That is, the attorney there had

previously been privy to the insurer's confidential information, and could use that information to the insured's advantage.

Therefore, both *Yellow Cab's* holding and its reasoning support the conclusion that Nevada law requires the appointment of independent counsel when a conflict of interest arises. The Nevada Supreme Court's determination that an attorney cannot represent an insured against its former insurer in a later conflict means the Court would similarly prohibit a single attorney to represent both the insured and the insurer in a case when a conflict arises.  Moreover, the Court (1) recognized that defense counsel represents both the insurer and the insured in the absence of conflict; (2) recognized that a conflict of interest can exist between an insured and insurer; and (3) held by negative implication that when such a conflict exists in more than hypothetical form, the parties must have separate and independent counsel ("dual-representation . . . is permissible as long as any conflict remains speculative").  *Yellow Cab*, 152 P.2d at 741, 743.

For these reasons, and for the reasons articulated below, Nevada law requires that independent *Cumis* counsel must be appointed when a conflict of interest arises between the insured and insurer.

### b. The majority of courts apply a *Cumis*-type duty

California's requirement for independent counsel when an insurer and insured are in conflict is the majority rule.[9]  Courts often apply a *Cumis*-type requirement as follows:

---

[9] *See Federal Ins. Co. v. X-Rite, Inc.*, 748 F. Supp. 1223, 1228 (D. Mich. 1990) (stating "*Cumis* is representative of a growing body of case law which would give the insured an absolute right to choose counsel where a conflict exists"); *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996) (noting that "other jurisdictions have generally held that in such a situation [defending under a reservation of rights], not only must the insured be given the opportunity to select his own counsel to defend the claim, the carrier must also pay the legal fees reasonably incurred in the defense"); *Union Ins. Co. v. Knife Co.*, 902 F. Supp. 877, 880 (W.D. Ark. 1995) (stating "[d]ue to this [coverage] conflict of interest . . . the insurer must give up control of the litigation and retain an independent counsel for the insured"); *CHI of Alaska v. Employers Reins. Corp.*, 844 P.2d 1113, 1121 (Alaska 1993) (concluding that "the insured should have the right to select independent counsel" subject to the "implied covenant of good faith and fair dealing"); *Village of Lombard v. Intergovernmental Risk* (fn. cont..

> A majority of courts remedy the conflict attendant with defending subject to a reservation of rights by requiring the insurer to pay the reasonable expenses of independent counsel. In reaching this conclusion, courts generally engage in the following analysis.
>
> The attorney retained by the insurer to defend the insured serves two clients, the insurer and insured. This premise is often referred to as the "dual client doctrine." When the insurer elects to defend subject to a reservation of rights, the interests of retained counsel's clients become adverse. The insured will work toward preserving indemnity whereas the insurer focuses on establishing non-coverage.
>
> The conflicting interests of retained counsel's two clients makes ethical representation of both difficult if not impossible. Courts identify the following potential problem areas: First, retained counsel may become aware of information damaging to a client through confidential communication with the other client. Second, retained counsel potentially could manipulate the trial strategy to benefit the interests of one client to the detriment of the other. For example, when seeking special verdicts, retained counsel will be responsible for framing jury questions, the answers to which, in many cases, will determine coverage/non-coverage.
>
> When faced with a decision that compromises the interests of one client over the other, courts in the majority presuppose that defense counsel will favor the insurer over the insured. Acknowledging that "no man can serve two masters," the ethical prohibition against representation of two clients with conflicting, inconsistent, diverse or otherwise discordant' interests, and the insurer's duty to defend, courts in the majority conclude that where a conflict of interest arises out of the insurer's reservation of rights to deny coverage, the insurer must pay for the reasonable costs of the insured's independent counsel.

Allison M. Mizuo, *Finley v. Home Insurance Co.: Hawai'i's Answer to the Troubling Tripartite Problem*, 22 U. Haw. L. Rev. 675, 680-82 (2000).

### c.   Minority approach

Not all jurisdictions require insurance companies to provide policyholders with independent counsel when a conflict arises between the insurer and its client. *See, e.g., Finley v. Home Insurance Co.*, 975 P.2d 1145, 1151-52 (Haw. 1998) ("[t]here is no consensus on this issue nationwide . . . we are convinced that the best result is to refrain

---

*(…fn. cont.)*
*Mgmt. Agency*, 681 N.E.2d 88, 94 (Ill. 1997) (holding that the insured can select independent counsel except where the insurer and insured contractually agree to limit scope of the defense and liability obligations); *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 854 (Md. App. 1975) (requiring the insurer to inform the insured of the conflict and provide the insured with the option of accepting counsel selected by the insurer or selecting independent counsel whose reasonable expenses will be paid by the insurer).


from interfering with the insurer's contractual right to select counsel and leave the resolution of the conflict to the integrity of retained defense counsel.")

In fact, the Third Restatement of the Law Governing Lawyers states that "[i]t is clear in an insurance situation that a lawyer designated to defend the insured has a client-lawyer relationship with the insured. The insurer is not, simply by the fact that it designates the lawyer, a client of the lawyer." Restatement (Third) of Law Governing Lawyers § 134 (2000), comment f.

Courts following the minority approach reason that a conflict of interest between the insured and insurer does not require the appointment of independent counsel because (1) attorneys owe a duty of loyalty to the insured, not the insurer, and (2) external mechanisms such as malpractice lawsuits or ethical sanctions disincentivize a lawyer placing the insurer's interests above the insured. *See, e.g., Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 373 (4th Cir. 2005) ("As part of exercising the lawyer's professional judgment, an attorney in South Carolina who represents an insured owes the insured a duty of loyalty and cannot, for example, communicate information detrimental to the insured to the insurance company. . . . a violation of these rules could lead to sanctions such as suspension, public reprimand, or disbarment. . . . These possibilities, coupled with the threat of bad faith actions or malpractice actions if a lawyer violates these rules, provide strong external incentives for attorneys to comply with their ethical obligations.").

### d. The *Cumis* requirement is in accord with Nevada law.

As explained *supra*, the *Cumis* requirement is in accord with Nevada law for three primary reasons. First, in *Yellow Cab*, the Nevada Supreme Court held that an attorney hired by the insurer to defend its client represents both the insurer and the insured absent a conflict of interest. 152 P.3d at 742. This establishes that the minority approach – when a conflict of interest arises between the insured and the insurer, the appointed attorney only owes a duty of loyalty to the insured – is unworkable in Nevada. More importantly, the *Yellow Cab* Court's determination that "joint representation is

permissible as long as any conflict remains speculative" means that joint representation is *impermissible* when a conflict of interest is real. 152 P.3d at 74. So the insured must have independent counsel in such a scenario.

Second, although Nevada has not expressly adopted a *Cumis* requirement, Defendants are incorrect that Nevada's silence indicates rejection. Rather, because Nevada courts routinely look to California law where Nevada law is silent, it is likely that Nevada courts simply found no need to expressly adopt a *Cumis* requirement. It is also likely that this issue has not been raised before the Nevada Supreme court.

Finally, requiring *Cumis* counsel is the majority rule, and the Court is persuaded by the reasoning of the majority view – that the inherent tension between the interests represented in the insurer-insured relationship requires the insurer to provide its policyholder with independent counsel when a conflict of interest arises. As articulated by the Eighth Circuit,

> it is impossible for one attorney to adequately and fairly represent two parties in litigation in the face of the real conflict of interest which existed here. Even the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interests of his real client-the one who is paying his fee and from whom he hopes to receive future business-the insurance company.

*United States Fidelity & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932, 938 n.5 (8th Cir. 1978).

### 3. Whether the Aguilars were entitled to independent counsel

SFA asserts that if the reservation of rights created a conflict of interest, the conflict was merely theoretical and lasted only two months. This is because two months after SFA agreed to defend Brad, Brad gave deposition testimony admitting negligent actions and denying intentional conduct. Therefore, according to SFA, the parties' interests were aligned: Brad admitted to negligence, and SFA agreed to cover his negligent conduct under the policy.

Plaintiffs counter that the Aguilars and SFA had several conflicting interests regarding the disposition of the state court case. First, the reservation of rights

14

constituted a conflict of interest because Hansen, Grill, and Lefevre sued the Aguilars for intentional conduct and sought punitive damages, both of which SFA asserted that it would likely not cover in its reservation of rights letter.[10]  Second, Plaintiffs assert that SFA's $7,500 offer during the December 15, 2005 settlement negotiations constituted a conflict of interest, presumably because if SFA had offered more or worked harder towards a settlement, the case would have settled, which was Brad's desire.  Finally, Plaintiffs assert that SFA's theory of the case–that Brad was liable only for acts arising from his use of a motor vehicle, and not for acts unrelated to his conduct in the car– precluded recovery under the $100,000 SFF homeowner's policy.  This in turn meant that the Aguilars would only be able to recover $25,000 worth of any judgment from their insurer; the rest would have to come from their personal funds.  Plaintiffs claim that this scheme to "low-ball" the Aguilars was adverse to their interests and presented a conflict justifying the appointment of *Cumis* counsel.

### a. Reservation of rights

"When an insurer defends under a reservation of rights . . . a conflict of interest may arise." *Nat. Union Fire Ins. Co. v. Hilton Hotels Corp.*, No. 90-2189, 1991 WL 405182, at *3 (N.D. Cal. May 6, 1991); *Cont'l Cas.*, 265 F.R.D. at 513.  This is because when an insured agrees to represent an insurer under a reservation of rights, it is often the case that the insurer and insured have opposing interests.

---

[10]Another example of SFA's alleged breach proffered by Plaintiffs was SFA's decision to file a declaratory relief action based upon its view that intentional acts are not covered under the car insurance policy. It is true that because of an insurance company's adverse interest to the insured, insurance companies often file a declaratory judgment to determine coverage and the insurer's obligation to defend the insured. Therefore, it may be that SFA's decision to file a declaratory relief action demonstrates that a conflict of interest existed between SFA and the Aguilars. The declaratory relief action was premised on SFA's view that any allegedly intentional acts in the state law case were not covered by the car insurance policy. Yet this conflict of interest, if it in fact constitutes a conflict of interest, is the same conflict presented by the reservation of rights letter. Therefore, SFA's declaratory judgment action is one fact the Court considers in determining whether a conflict of interest between SFA and the Aguilars existed.

Notably, while some courts hold that a reservation of rights letter creates a *per se* conflict of interest,[11] others consider the question on a case-by-case basis.[12] *Twin City*, 433 F.3d at 370-71.

The *Twin City* court explained that courts applying the *per se* rule identify three primary conflicts created by a reservation of rights letter. 433 F.3d at 370-71. First, "if an insurance company contends that a particular loss will not be covered under the policy, the lawyer hired by the insurance company may offer only a token defense of the potentially non-covered claim or conduct the defense in such a manner as to make the likelihood of the plaintiff's verdict greater on the non-covered claim." *Id.* at 371. Second, "the lawyer hired by the insurance company might gain access to confidential information

---

[11] As explained in *Twin City*, 433 F.3d at 371, these cases include:

[*CHI of Alaska*, 844 P.2d at 1118]; *Union Ins. Co. v. Knife Co.*, Inc., 902 F. Supp. 877, 880 (W.D. Ark. 1995) (predicting Arkansas law); *Kroll & Tract v. Paris & Paris*, 72 Cal. App. 4th 1537 (1999) (citing Cal. Civ. Code § 2860); *Nandorf, Inc. v. CNA Ins. Cos.*, 134 Ill. App. 3d 134, 137 (1985) (finding conflict when punitive damages not covered by policy); *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 788 N.E. 2d 522, 539 (2003); *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 625 (8th Cir.1981) (predicting Missouri law); *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So.2d 1062, 1069 (Miss. 1996); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983) (applying Texas law).

[12] As explained in *Twin City*, 433 F.3d at 371, these cases include:

*L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1304 (Ala. 1987); *Travelers Indem. Co. of Ill. v. Royal Oak Enter.*, Inc., 344 F. Supp. 2d 1358, 1374 (M.D. Fla. 2004) (predicting Florida law); *Armstrong Cleaners, Inc. v. Erie Ins. Exch.*, 364 F. Supp. 2d 797, 816 (S.D. Ind. 2005) (applying Indiana law); *Trinity Universal Ins. Co. v. Stevens Forestry Serv., Inc.*, 335 F.3d 353, 356 (5th Cir. 2003) (applying Louisiana law); *Finley*, 975 P.2d at 1150-55; *Cent. Mich. Bd. of Trs. v. Employers Reins. Corp.*, 117 F. Supp. 2d 627, 634-35 (E.D. Mich. 2000) (applying Michigan law); [*X-Rite*, 748 F. Supp. at 1229] (same); *Driggs Corp. v. Pa. Mfrs. Ass'n Ins. Co.*, 3 F. Supp. 2d 657, 659 (D. Md. 1998) (applying Maryland law); *Nisson v. Am. Home Assur. Co.*, 917 P.2d 488, 490 (Okla. Civ. App. 1996); *HK Sys., Inc. v. Admiral Ins. Co.*, No. 03 C 0795, 2005 WL 1563340, at *8-10 (E.D. Wis. June 27, 2005) (applying Wisconsin law); *Tank v. State Farm Fire & Cas. Co.*, 105 Wash. 2d 381, 715 P.2d 1133, 1137-38 (1986) (holding that potential conflict created by reservation of rights mandates enhanced obligations of good faith for attorneys whose fees are covered by insurer).

during the defense that the lawyer might provide to the insurance company to contest coverage." *Id.* This concern is closely related to the concern articulated in *Yellow Cab* – that the lawyer who had represented both the insurer and the insured might use the insurer's confidential information against it in the later suit for bad faith. 152 P.2d at 743. A third concern raised by a reservation of rights letter described in *Twin City* is that "the lawyer retained to defend the insured might tend to favor the insurance company over the insured due to a desire to receive future legal work from the insurance company." 433 F.3d at 371.

The Court determines that a reservation of rights letter can create a conflict of interest, but that Nevada courts would determine the question on a case by case basis. This is because insurers almost always defend under a reservation of rights, and defending under a reservation of rights always creates at least a theoretical conflict of interest. *See Twin City*, 433 F.3d at 371. However, the *Yellow Cab* Court left room for dual representation when a conflict of interest is merely speculative. 152 P.3d at 741. So a *per se* rule would not comport with Nevada law. Accordingly, whether or not an insurer's reservation of rights creates a conflict of interest must be determined by looking to the particular facts of each case. *See id.*

In this case, SFA's decision to defend the Aguilars under a reservation of rights created a conflict of interest. Although Brad admitted to negligent action and denied intentional conduct, SFA is incorrect that this meant any conflict of interest was merely hypothetical. The plaintiffs in the state court case sued Brad, and later Ernest, for both negligent *and* intentional conduct. (*See* dkt. no. 43, ex. 1.) After Brad denied intentional wrongdoing, the plaintiffs did not amend their complaint to drop any allegations regarding intentional conduct. (*See id.*) Rather, the plaintiffs continued to pursue claims for negligent and intentional conduct against the Aguilars. As such, the conflict of interest between the Aguilars and SFA was more than the hypothetical conflict that arises with every reservation of rights letter. It was a real conflict because the plaintiffs in the state law case alleged the Aguilars were liable for intentional conduct and sought

1  punitive damages, and SFA reserved the right to deny coverage for those claims and
2  damages. Therefore, the dangers of dual representation articulated in *Twin City* existed.
3  The possibility that Mr. Clayton and the HJC attorneys would only make nominal efforts
4  to defend against the intentional tort claims and punitive damages existed. *See Twin*
5  *City*, 422 F.3d at 371. And the concern that the counsel from HJC would gain access to
6  confidential information which could later be used against the Aguilars if SFA contested
7  coverage existed.[13] *Id.*

8  For the foregoing reasons, there was a conflict of interest between the Aguilars
9  and SFA in the state court action. SFA's contractual duty to defend the Aguilars
10  encompassed its obligation to provide the Aguilars with independent counsel.[14]

### b. Appointment of independent counsel

12  Notably, *Cumis* counsel requires the insurer, not the insured, to compensate the
13  insured's independent attorney. SFA did not provide the Aguilars with independent
14  counsel here. Therefore, neither the fact that SFA informed the Aguilars that they could
15  retain private counsel in the reservation of rights letters nor the later appointment of
16  personal attorney David Sampson suffices.[15] *See Emps. Ins. of Wausau v. Albert D.*

---

[13] This concern is ever-present in the tripartite attorney-insurer-insured relationship. It is present even when the conflict between the insurer and insured is merely hypothetical, and therefore on its own may not be reason for the appointment of *Cumis* counsel. However, here, where the parties' interests remained adverse throughout the litigation, and where Defendant filed a declaratory relief action to determine the scope of its coverage, the concern was heightened. The facts of this case demonstrate that there was a real threat that an attorney representing both SFA and the Aguilars might have the opportunity to use the Aguilars' confidential information against them on behalf of SFA in future litigation regarding coverage.

[14] Because the Court determines that the reservation of rights created a conflict of interest, it does not address Plaintiffs' other arguments *infra* in Part (III)(B)(3) regarding whether or not a conflict of interest existed between the Aguilars and SFA.

[15] The fact that Brad was separately represented by an attorney from Allstate also does not constitute *Cumis* counsel for this reason. SFA further asserts that the appointment of attorneys Sherrod and Winspar satisfies the *Cumis* requirement. But Sherrod and Winspar were appointed in 2008, well after the reservation of rights letters were issued to Brad and Ernest, and such appointment cannot satisfy the requirement. Moreover, the attorneys were appointed because a conflict existed between the two *insureds*, not the insurer and the insured. Accordingly, under *Yellow Cab*, Winspar (fn. cont..

*Seeno Const. Co.*, 692 F. Supp. 1150, 1153 (N.D. Cal. 1988) (discussing the *Cumis* requirement: "where the insured has exercised its right to select independent counsel *paid for by the insurer* because a conflict or potential conflict has arisen between the insurer and the insured." (emphasis added)).

## IV. CONCLUSION

For the reasons stated above, Plaintiffs have demonstrated that SFA breached its duty to defend under the insurance agreement by not providing the Aguilars with independent counsel in the state court litigation. This constituted a material breach of the insurance agreement, and voided the Aguilars' duty to cooperate with SFA and their other duties under the insurance agreement. *See Lozier, supra,* 951 F.2d at 256. As such, SFA's argument that it is not liable because the August 2008 settlement and stipulated judgment violate the terms of the Aguilars' insurance contract fails.

IT IS THEREFORE ORDERED that Defendant State Farm Auto's Motion for Summary Judgment (dkt. no. 40) is DENIED.

DATED THIS 12th day of December 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

*(…fn. cont.)*
represented SFA and Brad; Sherrod represented Ernest and SFA. The two attorneys were not *Cumis* counsel.