UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEPHEN TANNER HANSEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 2:10-cv-01434-MMD-RJJ<br><br>ORDER<br><br>(State Farm Fire's Motion for Summary Judgment – dkt. no. 102)<br><br>(Plaintiffs' Motion for Reconsideration – dkt. no. 153)<br><br>(Plaintiffs' Motion for Partial Summary Judgment – dkt. no. 63) |

Before the Court is Defendant State Farm Fire's Motion for Summary Judgment (dkt. no. 102), and Plaintiffs' Motion for Reconsideration (dkt. no. 153) and Motion for Partial Summary Judgment (dkt. no. 63).

**I.   BACKGROUND**

This case concerns an assignment of rights belonging to an insured against an insurance company. The original lawsuit involving the parties to this case was filed in state court in late 2004. Below is a summary of the facts pertinent to this Motion.

**A.   The Incident Giving Rise to the Original Lawsuit**

On July 18, 2003, Plaintiff Stephen Hansen and two friends, Craig LeFevre and Joe Grill, attended a party in the suburbs of Las Vegas, Nevada. Members of a local gang called the "311 Boyz," including assignor Brad Aguilar, were at the party. Hansen, LeFevre, and Grill felt uncomfortable and decided to leave the party, but were prevented

from doing so because several individuals were sitting on or standing behind Craig's vehicle. At this point, a partygoer named Matt Costello hit Craig several times. Craig eventually drove away from the party towards the gated portion of the subdivision. Brad Aguilar followed Craig's car in Brad's jeep. While stopped at the gate, Craig's vehicle was hit from behind by Brad. The jeep was insured under an automobile insurance policy purchased by Brad's father, Ernest Aguilar, from State Farm Mutual Automobile Insurance Company ("SFA").

After Craig, Grill, and Hansen exited the security gate and as Craig was attempting to drive away, his vehicle was showered with rocks, bottles, and cans, allegedly hurled by individuals from the party. Craig and Grill suffered minor injuries. Hansen suffered severe and permanent injuries when he was struck by a large rock that crashed through the windshield of Craig's car during the incident. Hansen has undergone multiple surgeries and remains in need of future medical treatment.

### B.     The State Court Action

The 311 Boyz incident formed the basis of a state court action filed by Hansen, Craig, Grill, and their respective parents on December 30, 2004. Defendants included Brad Aguilar and eleven other alleged members of the 311 Boyz. The complaint alleged liability under a theory of negligence as well as intentional behavior, including assault, battery, false imprisonment, conspiracy, and RICO. (*See* dkt. no. 43, ex. 2.)

On or about September 23, 2005, SFA received a demand to defend or indemnify Brad Aguilar. The demand was sent by attorney Dennis Prince, counsel for Brad's mother, who was insured under an Allstate Homeowner's Policy. On November 9, 2005, SFA agreed to defend Brad under a reservation of rights.

In March 2006, Ernest Aguilar, Brad's father, was added to the lawsuit in the second amended complaint. SFA accepted Ernest's defense under a reservation of rights and provided him with counsel from HJC. The Aguilars also sent a demand to defend or indemnify to their homeowner insurance carrier, State Farm Fire & Casualty

///

Company ("SFF"). SFF initially denied Ernest coverage, but on February 5, 2007, SFF agreed to defend Ernest subject to a reservation of rights.[1]

The amended complaint adding Ernest as a Defendant included the following claims against Ernest in his capacity as Brad's parent:

- Imputed liability under NRS § 41.470: Ernest was liable for any act of willful misconduct by any of his minor children with regard to the underlying incident. The claims asserted against Brad and allegedly imputed to Ernest were (1) negligence arising from Brad's conduct in the Jeep; (2) emotional distress; (3) false imprisonment/assault/battery; (4) civil conspiracy/concert of action; (5) concert of action; (6) violation of Nevada RICO.

- Negligent entrustment: Ernest owned the Jeep driven by Brad and knew or should have known that Brad lacked the necessary skills to operate the vehicle.

- Negligence: Ernest had a duty to exercise due care in Brad's supervision, instruction, and care. Ernest breached this duty because he should have known of Brad's propensity for violent behavior, and failed to take appropriate action to prevent such behavior.

During discovery, Brad admitted that he struck LeFevre's vehicle, but claimed that it was accidental. He denied intentional wrongdoing. Because Brad admitted striking LeFevre's vehicle, plaintiffs moved for summary judgment on the negligence claim. On May 12, 2006, the state court entered summary judgment in favor of Hansen against Brad on the negligence claim, holding that Brad breached a duty of care owed to plaintiffs with respect to the incident at the gate.

On May 30, 2006, the plaintiffs sent a demand letter to the Aguilar's attorneys for $125,000. This represented Brad and Ernest's total State Farm policy limits – $100,000 in homeowner's insurance and $25,000 in automobile insurance. On July 10, 2006, SFA

///
///
///

---

[1] SFF never agreed to indemnify or defend Brad. The Court previously granted summary judgment in SFF's favor on claims brought against it by Plaintiffs in their capacity as Brad's assignees. (Dkt. no. 101.)

3

offered $25,000 to Hansen and $25,000 to plaintiffs Grill and Lefevre, to be apportioned equally between them.[2]  Grill and Lefevre accepted the offer but Hansen rejected it.

On August 22, 2008, SFF's counsel, Nathaniel Hannaford, informed the Aguilars' personal attorney, David Sampson, that SFF had agreed to indemnify Ernest in the amount of $5,100, and to make additional payments of $400 in $100 increments to be paid annually beginning on September 1, 2009.

On August 26, 2008, Brad and Ernest signed two separate settlement agreements to the following effect:

- Brad assigned his rights against SFA in favor of Hansen and LeFevre
- Brad's assignment acknowledged that a judgment of $176,000 had been entered against him in favor of Hansen and LeFevre on the claims of "negligence" and "negligence per se."
- Brad assigned all breach of contract and bad faith claims which he held to Hansen and Lefevre
- Ernest assigned his rights against SFA in favor of Hansen and LeFevre
- Ernest's assignment acknowledged that a judgment of $176,000 had been entered against him in favor of Hansen and LeFevre on the claims of "negligence" and "negligence per se."
- Ernest assigned all breach of contract and bad faith claims which he held to Hansen and Lefevre

On October 16, 2008, two Stipulations for Entry of Judgment were filed in state court in the sum of $176,000 on plaintiffs' negligence and negligence per se claims, one for their claims against Brad and one for their claims against Ernest.

**C.    The Present Action**

Hansen and LeFevre filed this lawsuit on August 26, 2009, alleging breach of contract, contractual and/or tortious breach of the implied covenant of good faith and fair dealing, violation of the Nevada Unfair Claims Practices Act, and declaratory relief against SFA and SFF based upon the stipulated judgments and assignment of rights.

---

[2]It is unclear to the Court whether the parties represent that the auto insurance policy allowed for one or two (one amount for Ernest and one for Brad) payouts of $25,000.  This issue, however, is not relevant for the purposes of the disposition of this Motion.

The Court previously granted SFF's Motion for Summary Judgment regarding Plaintiffs' claims brought as Brad's assignees. (Dkt. no. 101.) Plaintiffs have filed a Motion for Reconsideration of that Order. (Dtk. no. 153.) SFF now moves for summary judgment on Plaintiffs' claims brought against SFF on Ernest's behalf. (Dkt. no. 102.)

## II.     STATE FARM FIRE'S MOTION FOR SUMMARY JUDGMENT

SFF moves for summary judgment on the claims brought against it by Plaintiffs in their capacity as Ernest's assignees. However, though SFF states that it is moving for summary judgment rather than partial summary judgment, SFF does not address Plaintiffs' allegations in the Complaint regarding violation of the Nevada Unfair Claims Practices Act or misrepresentation. The Court accordingly treats SFF's Motion as a motion for partial summary judgment.

### A.     Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all

inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## B. Breach of Contract

SFF moves to dismiss Plaintiffs' claims that (1) it breached its contractual duty to indemnify Ernest, and (2) it breached its contractual duty to defend Ernest. Notably, the "duty to defend is broader than the obligation to indemnify, from which it must be distinguished." *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1185 (2000). "The duty to defend exists whenever an insurer ascertains facts giving rise to the potential of liability to indemnify. Unlike the obligation to indemnify, which is only determined when the insured's underlying liability is established, the duty to defend must be assessed at the very outset of a case." *Id.* Further, an "insurer may have a duty to defend even when it ultimately has no obligation to indemnify, either because no

6

damages are awarded in the underlying action against the insured, or because the actual judgment is for damages not covered under the policy." *Id.*

The Court addresses each breach of contract claim accordingly.

### 1. Breach of Contract – Duty to Indemnify

SFF maintains that the claims asserted by Plaintiffs on Ernest's behalf were never covered under the homeowner's insurance policy, and SFF therefore did not have a duty to indemnify Ernest. SFF argues that the homeowner's insurance policy specifically denies coverage for (1) negligent acts arising out of the use of a motor vehicle; and (2) intentional conduct. However, SFF states that all claims asserted against Ernest involve either Brad's negligence arising out of his use of the jeep or alleged intentional conduct involving the rocks, bottles, and other items thrown at Hansen, Grill, and LeFevre on the night of the incident. Accordingly, there can be no coverage under the homeowner's policy.

#### a. Estoppel/Waiver

Plaintiffs contend that SFF has waived any right to assert any defense regarding denial of coverage because it agreed to partially indemnify Ernest in August 2008. Plaintiffs also argue that because of the partial indemnification, SFF is estopped from arguing non-coverage.

##### i. Waiver

SFF argues that it did not waive its duty to indemnify because it initially informed Ernest that SFF reserved its right not to indemnify him and maintained this position throughout its involvement in the state court litigation. According to SFF, the $5,500 payment was "made as an accommodation to the insured, nothing more." (Dkt. no. 141 at 12.)

"A waiver is the intentional relinquishment of a known right. A waiver may be implied from conduct which evidences an intention to waive a right, or by conduct which is inconsistent with any other intention than to waive the right." *Mahban v. MGM Grand Hotels, Inc.*, 691 P.2d 421, 423 (Nev. 1984) (citations omitted).

"Generally, whether a waiver has occurred is a question for the fact-finder." *Prime Ins. Syndicate, Inc. v. Damaso*, 471 F. Supp. 2d 1087, 1098 (D. Nev. 2007) (citation omitted). "In the insurance context, however, there is a well established doctrine that waiver and/or estoppel cannot be used to extend the coverage or the scope of the policy." *Id.* at 1098 (quoting *Walker v. Am. Ice Co.*, 254 F. Supp. 736, 741 (D.D.C. 1966)). "This doctrine reflects the majority rule." *Id.* (citing *Creveling v. Gov't Employees Ins. Co.*, 828 A.2d 229 (2003) (collecting cases and treatises)). In *Damaso*, the court concluded that Nevada would follow this majority rule. *Id.* at 1098-99 (in Nevada, a "litigant [cannot] use waiver to extend the coverage or scope of an insurance policy to include claims expressly excluded from the contract."). Therefore, because, as explained *supra*, the clear terms of the homeowner's policy exclude coverage, Plaintiffs cannot use the waiver or estoppel doctrines to obtain coverage where none existed.

Further, even assuming *arguendo* that the waiver doctrine applied here, no reasonable juror could determine that SFF's decision to partially indemnify Ernest demonstrated an intent to waive its claim that terms of the homeowner's insurance policy preclude coverage. *Cf. Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995) ("waiver requires the insurer to intentionally relinquish its right to deny coverage[,] and [] a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial."). The clear language of the February 5, 2007, reservation of rights letter stated that, although SFF agreed to defend Ernest, SFF's "defense of Mr. Aguilar is subject to the issues raised in [SFF's] Reservation of Rights letter dated April 14, 2006." (Dkt. no. 138-1 at 70.) The April 2006 letter stated that SFF "specifically reserve[d] the right to deny defense or indemnify" Ernest for several reasons, including that the events giving rise to the incident did not

///
///
///
///

constitute an "occurrence" under the insurance contract or that the events fell under the motor vehicle exclusion to the insurance policy.[3] (Dkt. no. 104 at 8-10.)

Therefore, there does not exist a genuine question of material fact regarding the reservation of rights. SFF's decision to partially indemnify Ernest does not waive its right to deny Ernest *full* indemnification, as SFF informed Ernest several times that it expressly reserved the right to deny coverage. Moreover, were the Court to give credence to Plaintiffs' argument, this could disincentivize insurers from partially indemnifying their insureds for fear that a partial indemnification would always waive their ability to deny full coverage. The Court declines to endorse such a specious theory.

### ii.     Estoppel

As stated, the estoppel doctrine cannot be used to expand insurance coverage as Plaintiffs attempt to do here. *See Damaso*, 471 F. Supp. 2d at 1098-99. However, even were the Court to apply the estoppel doctrine to this case, Plaintiffs' argument regarding estoppel would fail.

"[E]stoppel is any conduct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law. It is grounded not on subjective intent but rather on the objective impression created by the actor's conduct." *Peasley v. Verizon Wireless (VAW) LLC*, 364 F. Supp. 2d 1198, 1200 (S.D. Cal. 2005). Estoppel requires "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." *Oakland-Alameda Cnty. Coliseum, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 480 F. Supp. 2d 1182, 1192 (N.D. Cal. 2007).

---

[3] The April 14, 2006 letter further stated that "any action taken [by SFF] or its authorized representatives in investigating, negotiating, denying, or defending claims arising out of the above incident shall not be considered a waiver of such policy defenses . . . ." (Dkt. no. 104 at 10.)

"Application of estoppel in the insurance context typically arises from some affirmative, misleading conduct on the part of the insurer." *California Dairies Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023, 1047 (E.D. Cal. 2009) (citing *Spray, Gould & Bowers v. Associated Int'l Ins. Co.*, 71 Cal. App. 4th 1260, 1268 (2002)). "Absent such affirmative conduct, estoppel may arise from silence when the party has a duty to speak, such as where a legal obligation requires disclosure." *RSUI*, 617 F. Supp. 2d at 1047.

Plaintiffs' theory regarding SFF's misconduct is that SFF deceived Plaintiffs into believing that it was not providing Ernest coverage, so that Plaintiffs believed it was Ernest or Ernest and Brad jointly, and not SFF, who agreed to pay them the $5,500. (Dkt. no. 136 at 20.) However, SFF informed the Aguilars' counsel on August 22, 2008 about its agreement to pay Plaintiffs $5,500. (*Id.* at 14.) An "assignee stands in the shoes of the assignor, acquiring all of its rights and liabilities." *Prof'l Collection Consultants v. Hanada*, 53 Cal. App. 4th 1016, 1018 (1997). SFF did not misrepresent its plan to partially indemnify Ernest to Ernest's attorney. Nor is there other evidence of misleading conduct or a failure to disclose. Accordingly, Plaintiffs, standing in Ernest's shoes, have no cognizable estoppel claim.

As the Court determines that SFF has not waived its ability to argue non-coverage and that SFF is not estopped from making such an argument, it next addresses whether the homeowner's insurance policy covered those claims asserted against Ernest Aguilar in the second amended complaint to the state court litigation.

### b. Negligence Claims

The negligence-related claims asserted against Brad, and imputed to Ernest as Brad's parent, arose out of Brad's use of the jeep on the night of the incident.

///
///
///
///
///

SFF argues that these claims are excluded by provision (e), which provides that:

[coverage does not apply to] bodily injury or property damage arising out of the ownership, maintenance, use, loading, or unloading of: . . . (2) a motor vehicle owned or operated by or rented or loaned to an insured.[4]

Although SFF agreed to defend all claims asserted against Ernest, it did so under a reservation of rights. SFA had already agreed to represent Brad and Ernest, and provided them with coverage for claims arising out of negligence associated with Brad's use of the jeep on the night of the incident. SFF's policy explicitly denies coverage for negligent conduct arising out of the use of a motor vehicle.

In *Vitale v. Jefferson Insurance Co. of New York*, 5. P.3d 1054, 1058 (Nev. 2000), and *Senteney v. Fire Insurance Exchange*, 707 P.2d 1149, 1150 (Nev. 1985), the Nevada Supreme Court held that automobile exclusions in analogous homeowner's insurance policies were valid. "In so doing, [the Court] stated that [it] would neither rewrite unambiguous insurance provisions nor attempt to increase the legal obligations of the parties where the parties intentionally limited such obligation." *Vitale*, 5 P.3d at 1057-58 (citing *Senteney*, 707 P.2d at 1151).

As stated in this Court's previous order (dkt. no. 101 at 5), the facts regarding Brad's involvement on the night of the incident are undisputed. Brad pursued Hansen, LeFevre, and Grill to a gate where Brad's jeep collided with Craig's truck. After Craig drove through the gate, other persons threw objects at the three men in Craig's car.

Therefore, the motor vehicle exclusion in the Aguilars' homeowner insurance policy precluded coverage for Brad's negligent behavior involving the vehicle. It likewise precludes coverage for any liability arising out of Brad's negligence imputed to Ernest as Brad's father. Plaintiffs, standing in Ernest's shoes, cannot sue SFF for failing to provide coverage where none existed.

///

---

[4]SFF also argues that exclusion (f) also precluded coverage. However, as the Court determines that provision (e) precluded coverage under the homeowner's insurance policy, it does not address this argument.

11

### c. Intentional Tort Claims

Plaintiffs dispute that Brad's behavior was limited to his hitting Craig's car with the jeep. Though they admit that on the evening of the incident Brad was behind the wheel of the jeep, Plaintiffs argue that Brad's affiliation with the 311 Boyz and his attendance at the party could be considered negligent activity on his part which a fact finder could determine caused Plaintiffs' damages. (Dkt. no. 133 at 10-11.) However, the clear facts of this case and the allegations in the state court litigation demonstrate otherwise. Further, even assuming *arguendo* that Brad was involved in non-vehicular activities leading to Plaintiffs' injuries, all of the claims alleged against Brad in the state court case unrelated to the motor vehicle involve *intentional* conduct not covered by the Aguilars' homeowner's insurance policy.

In the Court's March 3, 2012, Order, it held that all of the claims asserted against Brad (and allegedly imputed to Ernest) unrelated to the use of a motor vehicle required intent or willful conduct. (Dkt. no. 101 at 7.) These causes of action included intentional infliction of emotional distress, imprisonment, assault, battery, civil conspiracy, concert of action, and RICO.

The SFF insurance policy covers only negligent conduct. The SFF policy states that it covers "occurrences" and defines an "occurrence" as "an accident." The policy does not define "accident." However, in *Beckwith v. State Farm Fire & Casualty Co.*, 83 P.3d 275, 276 (Nev. 2004), the Nevada Supreme Court defined "accident" as "a happening that is not expected, foreseen, or intended." Intentional conduct is not an "accident" as so defined.

Accordingly, bodily injury resulting from intentional conduct cannot be an "occurrence" under the SFF policy. *See, e.g., Allstate Ins. Co. v. Bruttig*, No. 2:05-CV-1257, 2006 WL 3248393, at *3 (D. Nev. Nov. 3, 2006) (intentional conduct is not accidental, and therefore not an "occurrence" under insurance policy); *Beckwith*, 83 P.3d at 277 (same). Therefore, even if Brad were somehow involved with the 311 Boyz's
///

actions unrelated to his conduct in the jeep, SFF had no obligation to provide Ernest with insurance coverage for such activity.

For the reasons stated above, the Court grants SFF's Motion for Summary Judgment on Plaintiffs' claim that SFF breached its contractual duty to indemnify Ernest Aguilar.

### 2. Breach of Contract – Duty to Defend

SFF provided Ernest with a defense under a reservation of rights. While SFF initially declined to defend Ernest, only later defending him under a reservation of rights, Plaintiffs fail to demonstrate how such late entry either (1) breached the terms of the homeowner's insurance policy or (2) harmed Ernest. In fact, while Plaintiffs argue that SFF breached its duty to defend, they cite no case law to support this contention. Further, Plaintiffs' factual arguments on this point refer to SFF's failure to indemnify, not its failure to defend.

Because SFF provided Ernest with a defense, the Court grants SFF's Motion for Summary Judgment on Plaintiffs' claim that SFF breached its contractual duty to defend Ernest Aguilar.

### C. Bad Faith

The Court *in Amadeo v. Principal Mutual Life Insurance Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002) set forth the legal standard for bad faith claims in the context of an alleged breach of insurance contract: "[t]he covenant of good faith and fair dealing has particular application to insurers because they are invested with a discretionary power affecting the rights of another, and the insurance business is affected with a public interest and offers services of a quasi-public nature." (Quotation marks and citations omitted). "Reflecting the importance of insurers' good faith obligations, bad faith by an insurer is subject to tort remedies, including punitive damages." *Id.* (citation omitted).

"The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable." *Amadeo*, 290 F.3d at 1161 (quotation marks and citations omitted). "The genuine issue rule in the context of bad faith claims allows a district court to grant

1. summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable – for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability . . . ." *Id.* (citing *Safeco Ins. Co. of Am. v. Guyton*, 692 F.2d 551, 557 (9th Cir. 1982)). "In such a case, because a bad faith claim can succeed only if the insurer's conduct was unreasonable, the insurer is entitled to judgment as a matter of law." *Id.* at 1161-1162.

Here, SFF's refusal to fully indemnify Ernest Aguilar under the homeowner's insurance policy was reasonable. In its April 14, 2006, letter, SFF informed Ernest that it would defend him under a reservation of rights. SFF cited to the "occurrence" and motor vehicle exclusions as reasons why SFF did not have a contractual duty to indemnify or defend Ernest. SFF later declined to fully indemnify Ernest for those reasons. As fully explained *supra* in Part (II)(B)(1), the plain terms of the homeowner's policy did not cover the allegations asserted against Ernest in the state court litigation. Therefore, SFF's decision to only partially indemnify Ernest was manifestly reasonable.

Accordingly, no reasonable juror could determine that SFF's decision to only partially indemnify Ernest was unreasonable. The Court grants SFF's Motion for Summary Judgment on this claim.

**III. PLAINTIFFS' MOTION FOR RECONSIDERATION**

Plaintiffs request reconsideration of the Court's March 23, 2012, Order granting summary judgment to SFF for all claims assigned to Plaintiffs by Brad Aguilar. For the reasons discussed below, the Motion is granted in part and denied in part.

**A. Legal Standard**

Although not mentioned in the Federal Rules of Civil Procedure, motions for reconsideration may be brought under Rules 59(e) and 60(b). Plaintiffs bring this Motion under Rule 60(b).

Fed. R. Civ. P. 60(b) allows a court to relieve a party from a final judgment, order or proceeding only in the following circumstances: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5)

the judgment has been satisfied; or (6) any other reason justifying relief from the judgment. *Stewart v. Dupnik*, 243 F.3d 549, 549 (9th Cir. 2000); *see also De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000) (noting that the district court's denial of a Rule 60(b) motion is reviewed for an abuse of discretion).

A motion for reconsideration must set forth the following: (1) some valid reason why the court should revisit its prior order; and (2) facts or law of a "strongly convincing nature" in support of reversing the prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). On the other hand, a motion for reconsideration is properly denied when the movant fails to establish any reason justifying relief. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (holding that a district court properly denied a motion for reconsideration in which the plaintiff presented no arguments that were not already raised in his original motion)). Motions for reconsideration are not "the proper vehicles for rehashing old arguments," *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994) (footnotes omitted), and are not "intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977).

**B. Discussion**

**1. Summary Judgment on the Failure to Indemnify Claim**

For reasons largely discussed above, the Court correctly determined that SFF did not have a duty to indemnify Brad. The Court explained that all allegations against Brad either allegedly arose out of his use of a motor vehicle or his intentional conduct, neither of which were covered by the SFF homeowner's policy. The Court did not commit clear error in granting summary judgment on this claim.

**2. Summary Judgment on the Failure to Defend Claim**

The Court correctly determined that SFF did not have a duty to defend Brad. The Court noted that Plaintiffs did not provide anything other than conclusory points and authorities regarding SFF's Motion for Summary Judgment on this claim. Plaintiffs cannot bring arguments they failed to bring in their opposition in a Motion for

Reconsideration. *See Glavor v. Shearson Lehman Hutton, Inc.*, 879 F. Supp. 1028, 1033 (N.D. Cal. 1994) ("If a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived [in a motion for reconsideration]."). The Court did not commit clear error in granting summary judgment on this claim.

### 3. Summary Judgment on the Bad Faith Claim

The Court held that SFF demonstrated that its actions in denying Brad coverage under the policy were not taken in bad faith. The Court noted that Plaintiffs did not provide points and authorities regarding SFF's Motion for Summary Judgment on this claim. Plaintiffs cannot bring arguments they failed to bring in their opposition in a Motion for Reconsideration. *See Glavor*, 879 F. Supp. at 1033. The Court did not commit clear error in granting summary judgment on this claim.

### 4. Summary Judgment on Claims not addressed in the Order

Plaintiffs request that the Court reconsider its earlier decision to grant summary judgment on these claims. However, the Court's March 23, 2012, order did not address these allegations. Specifically, the Court did not address the third and fourth counts in Plaintiffs' Complaint regarding violation of the Nevada Unfair Claims Practices Act and misrepresentation. This is likely because SFF's Motion for Summary Judgment (dkt. no. 20) does not address those claims. Therefore, to the extent that the parties understood the Court's Order as dismissing all claims against SFF assigned to Plaintiffs by Brad Aguilar, Plaintiffs' Motion for Reconsideration is granted. The Court should not have granted summary judgment on those claims because SFF did not address those claims in its Motion and the Order does not address those claims. Any claims asserted against SFF by Plaintiffs in their capacity as Brad's assignees not explicitly addressed in the March 23 Order remain viable.

## IV. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs move for partial summary judgment, asking the Court to hold that (1) the motor vehicle exclusion in the SFF policy does not apply to bodily injuries unrelated to the use of the vehicle; (2) that the injuries suffered by Hansen from the rock throwing on

the night of the incident were not thrown from the vehicle operated by Brad; and (3) SFF cannot proffer evidence that Hansen's injuries arose out of the operation or use of the Aguilar jeep. Essentially, Plaintiffs seek a determination that Hansen's injuries arose out of conduct unrelated to the vehicle accident on the night of the incident, and that the terms of the homeowner's policy do not preclude coverage for those activities. Plaintiffs seem to believe that this would allow the homeowner policy to cover the rock-throwing that caused Hansen's permanent injuries.

In fact, the parties agree that Hansen's injuries were caused not by the vehicle accident between Brad's jeep and LeFevre's car, but from a large rock thrown by another member of the 311 Boyz. Brad was not involved in the activity.

Moreover, as stated in this Order and in this Court's March 23, 2012, Order, the homeowner's insurance policy does not cover the intentional conduct leading to Hansen's permanent injuries. It covers only negligent conduct, and all allegations in the second amended complaint regarding the rock-throwing incident involved intentional torts.

Accordingly, Plaintiffs' Motion is denied as moot. Even were the Court to hold that Brad was somehow involved in the rock-throwing that led to Hansen's injuries, there is no scenario where Plaintiffs, as the Aguilars' assignees, could recover under the homeowner's insurance policy.

///
///
///
///
///
///
///
///
///

## V. CONCLUSION

IT IS HEREBY ORDERED that Defendant State Farm Fire's Motion for Summary Judgment (dkt. no. 102) is GRANTED. However, the Court construes the Motion as a Motion for Partial Summary Judgment, and the claims not addressed in Defendant's Motion remain.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Reconsideration (dkt. no. 153) is GRANTED IN PART and DENIED IN PART as follows:

- The Motion is GRANTED to the extent that the March 23, 2012, Order (dkt. no. 101) granted summary judgment on claims not addressed in the Order;
- The Motion is DENIED in all other respects.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (dkt. no. 63) is DENIED AS MOOT.

DATED THIS 12th day of December 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE