1
2
3
4                          UNITED STATES DISTRICT COURT
5                               DISTRICT OF NEVADA
6                                      * * *
7                                          |    Case No. 2:10-cv-01434-MMD-NJK
    STEPHEN TANNER HANSEN, et al.,
8                                          |                ORDER
                            Plaintiffs,
9        v.                                |    (State Farm Fire's Motion for Partial
                                                Summary Judgment on Claims Assigned
10   STATE FARM MUTUAL AUTOMOBILE                    by Ernest Aguilar– dkt. no. 238)
    INSURANCE COMPANY, et al.,
11                                         |    (State Farm Fire's Motion for Partial
                            Defendants.        Summary Judgment  on Claims Assigned
12                                                  by Brad Aguilar– dkt. no. 240)
13

14   **I.     INTRODUCTION**

15          This case involves assignment of rights belonging to two insureds under separate

16   insurance policies. The Court has addressed all but two remaining claims — for

17   violations of the Nevada Unfair Claims Practices Act ("UCPA") and misrepresentation —

18   against Defendant State Farm Fire & Casualty Company ("SFF") under its homeowner's

19   insurance policy ("the Policy"). SFF filed separate motions for summary judgment on

20   these two remaining claims ("Motions"). (Dkt. nos. 238, 240.) Plaintiffs have opposed the

21   motions (dkt. nos. 257, 258) and SFF has replied (dkt. nos. 265, 268). Plaintiffs also

22   moved to file excess opposition briefs. (Dkt. nos. 255, 256.) While the Court finds that

23   Plaintiffs could have properly responded within LR 7-2's limit on the length of briefs, the

24   Court nevertheless grants Plaintiffs' requests.

25          The parties have also filed separate requests for judicial notice. (Dkt. nos. 242,

26   260, 262.)[1] The Court takes judicial notice of documents filed in the related state action.

27   _____

28          [1]Plaintiffs' two requests for judicial notice (dkt. nos. 260, 262) are essentially the
    same.

*See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (the court may take judicial notice of undisputed matters of public record under Fed. R. Evid. 201). The Court does not take judicial notice of the transcript of a deposition taken in this case (exhibit 5 to Plaintiffs' requests). Nor is it necessary for the Court to take judicial notice of published decision (exhibit 6 to Plaintiffs' requests). SFF's request for judicial notice (dkt. no. 242) is granted. Plaintiffs' requests for judicial notice (dkt. nos. 260, 262) are granted to the extent that the Court will take judicial notice of exhibits 1 through 4 and exhibit 7 to Plaintiffs' requests.

## II.    BACKGROUND

The relevant facts are recited in the Court's previous Orders. Accordingly, the Court will only recount facts and aspects of the procedural history that are relevant to the Motions.

### A.    The Incident Giving Rise to the Original Lawsuit

On July 18, 2003, Plaintiff Stephen Hansen and two friends, Craig LeFevre and Joe Grill, attended a party in the suburbs of Las Vegas, Nevada. Members of a local gang called the "311 Boyz," including assignor Brad Aguilar ("Brad"), were at the party. Hansen, LeFevre, and Grill felt uncomfortable and decided to leave the party, but were prevented from doing so because several individuals were sitting on or standing behind Craig's vehicle. At this point, a partygoer named Matt Costello hit Craig several times. Craig eventually drove away from the party towards the gated portion of the subdivision. Brad followed Craig's car in his Jeep. While stopped at the gate, Craig's vehicle was hit from behind by Brad. The Jeep was insured under an automobile insurance policy purchased by Brad's father, Ernest Aguilar, from State Farm Mutual Automobile Insurance Company ("SFA").

After Craig, Grill, and Hansen exited the security gate and as Craig was attempting to drive away, his vehicle was showered with rocks, bottles, and cans, allegedly hurled by individuals from the party. Craig and Grill suffered minor injuries. Hansen suffered severe and permanent injuries when he was struck by a large rock that

crashed through the windshield of Craig's car during the incident. Hansen has undergone multiple surgeries and remains in need of future medical treatment.

### B.    The State Court Action

The 311 Boyz incident ("Incident") formed the basis of a state court action (*Hansen v. 311 Boyz*, Case No. A497445) filed by Hansen, Craig, Grill, and their respective parents on December 30, 2004, against Brad and others ("State Court Action"). On or about September 23, 2005, SFA received a demand to defend or indemnify Brad. On November 9, 2005, SFA agreed to defend Brad under a reservation of rights. In March 2006, the plaintiffs filed a second amended complaint, adding Ernest Aguilar ("Ernest"), Brad's father, in his capacity as Brad's parent. SFA accepted Ernest's defense under a reservation of rights and provided him with counsel.

During discovery, Brad admitted that he struck LeFevre's vehicle, but claimed that it was accidental. He denied intentional wrongdoing. Because Brad admitted to striking LeFevre's vehicle, the plaintiffs moved for summary judgment on the negligence claim. On May 12, 2006, the state court entered summary judgment in favor of Hansen against Brad on the negligence claim, holding that Brad breached a duty of care owed to the plaintiffs with respect to the incident at the gate.

On May 30, 2006, the plaintiffs sent a demand letter to the Aguilars' attorneys for $125,000. This amount represented the limits of Brad and Ernest's State Farm policies — $100,000 in homeowner's insurance and $25,000 in automobile insurance.  On July 10, 2006, SFA offered $25,000 to Hansen and $25,000 to Plaintiffs Grill and Lefevre, to be apportioned equally between them.[2] Grill and Lefevre accepted the offer but Hansen rejected it.

On August 26, 2008, Brad and Ernest resolved their dispute with the plaintiffs in the State Court Action. They executed an Assignment in which they agreed to assign all

---

[2]It is unclear to the Court whether the parties represent that the auto insurance policy allowed for one or two payouts (one for Ernest and one for Brad) of $25,000.  This issue, however, is not relevant to the disposition of the Motions.

1 | rights to pursue and collect against any insurers of Brad and Ernest. (Dkt. no. 41 at 32-
2 | 41.)

3 | **C.    Tender of Coverage with SFF**

4 | SFF contends, and Plaintiffs do not dispute, that the Aguilars notified SFF of the

5 | State Court Action on March 29, 2006, after the complaint was amended. (Dkt. no. 238

6 | at 11.)[3] On April 14, 2006, SFF issued a separate reservation of rights letters to Ernest

7 | and to Brad. (Dkt. no. 102-2 at 8-10; dkt. no. 241 at 5-9.) On July 20, 2006, SFF notified

8 | Ernest of its decision to deny coverage, citing the motor vehicle exclusion in the Policy.[4]

9 | (Dkt. no. 102-2 at 12-15.) A similar denial letter was sent to Brad on the same date. (Dkt

10 | no. 21 at 41-45.) However, on February 5, 2007, SFF reversed its decision and agreed

11 | to defend Ernest, subject to its April 14, 2006, reservation of rights. (Dkt. no. 102-2 at

12 | 17.)  SFF did not change its coverage position with respect to Brad. (*Id.*)  On August 22,

13 | 2008, SFF's counsel, Nathaniel Hannaford, informed the Aguilars' personal attorney,

14 | David Sampson, that SFF had agreed to indemnify Ernest in the amount of $5,100, and

15 | to make an additional payment of $400 in $100 increments to be paid annually beginning

16 | on September 1, 2009. (Dkt. no. 38-2 at 5.)

17 | **D.    The Present Action**

18 | On August 26, 2009, Hansen and LeFevre filed this lawsuit in the Eighth Judicial

19 | District Court, Clark County. Plaintiffs allege claims for breach of contract, contractual

20 | and/or tortious breach of the implied covenant of good faith and fair dealing, violation of

21 | the UCPA, and declaratory relief against SFA and SFF based upon the stipulated

22 | judgments and assignment of rights from Brad and Ernest.

23 |
24 | [3]To demonstrate this notice, SFF offered its internal activity log where an entry dated March 29, 2006, noted that the auto claim previously submitted was forwarded on
25 | February 16, 2006. (Dkt. no. 21 at 39.) Plaintiffs do not dispute SFF's reference to the March 29, 2006, date but simply make the broad statement that SFF waited over a year after the initial complaint was filed to deny coverage. (Dkt. no. 258 at 12.) It is irrelevant
26 | which date — February 16, 2006, or March 29, 2006 — is accurate because a difference of a couple of weeks seems insignificant here.

27 | [4]The Court has found that the referenced motor vehicle exclusion applies to
28 | exclude coverage and relieves SFF of any duty to defend. (Dkt. no. 101 at 5; dkt. no. 177 at 7-11.)

The Court previously granted SFF's Motion for Summary Judgment regarding the claims that Plaintiffs brought as Brad's assignees. (Dkt. no. 101.) In response to Plaintiffs' Motion for Reconsideration of that Order (dkt. no. 153), the Court clarified that the Order did not address the third and fourth claims in Plaintiffs' Complaint for violations of the UCPA and misrepresentation, and that these claims remain viable. (Dkt. no. 177 at 16.) The Court also granted SFF's Motion for Summary Judgment regarding the claims that Plaintiffs brought as Ernest's assignees. (Dkt. no. 177.) In these prior Orders, the Court determined that, first, the SFF homeowner's insurance policy did not cover the allegations asserted against Brad and Ernest in the State Court Action and, second, SFF's refusal to fully indemnify Ernest was not unreasonable. (Dkt. no. 101 at 6-9; dkt. no. 177 at 7-10, 14.)  As a result of these prior Orders (dkt nos. 101, 177), only the two claims for violations of the UCPA and misrepresentation remain against SFF.

## III.   LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all

1  facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser*

2  *Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

3        The moving party bears the burden of showing that there are no genuine issues

4  of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once

5  the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting

6  the motion to "set forth specific facts showing that there is a genuine issue for trial."

7  *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the

8  pleadings but must produce specific evidence, through affidavits or admissible discovery

9  material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

10  1409 (9th Cir. 1991), and "must do more than simply show that there is some

11  metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764,

12  783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

13  574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the

14  plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

15  **IV.   DISCUSSION**

16        SFF's Motions raised essentially similar arguments because Brad and Ernest

17  were covered under the same Policy and Plaintiffs' claims arise from the Aguilars'

18  assignment of rights under the Policy. Moreover, the Motions properly rely on the Court's

19  prior rulings that the Policy does not cover the claims asserted in the State Court Action

20  and that, even if SFF reversed course and subsequently agreed to partially indemnify

21  Ernest, SFF did not act in bad faith with respect to its handling of Brad and Ernest's

22  tender under the Policy. (Dkt. nos. 101, 177.) In opposition, Plaintiffs attempt to reargue

23  these prior rulings and fail to recognize distinct rulings with respect to SFA and SFF.[5] As

---

25  [5]For example, Plaintiffs argue that SFF should have appointed *Cumis* counsel to
the Aguilars to ensure that SFA and SFF properly defended the Aguilars. However, the
26  Court has determined that SFF does not owe a duty to defend or a duty to indemnify
under the Policy. Thus, SFF's reservation of rights letters did not create a conflict that
27  would trigger the duty to retain independent counsel for the Aguilars. *See State Farm*
*Mut. Auto. Ins. Co. v. Hansen,* 131 Nev. Adv. Op. 74 (Sept. 24, 2015) (declaring that a
28  reservation of rights letter does not create a per se conflict of interest).

1    stated, after the Court's prior rulings, the two remaining claims against SFF are for

2    violations of the UCPA and misrepresentation as assignees of Brad and Ernest. The

3    Court will address these claims collectively.[6]

4        **A.    UCPA Claim**

5        SFF argues that it satisfied its duty to the Aguilars in the handling of their claims

6    by timely investigating and determining coverage and, accordingly, that it did not violate

7    any duty under the UCPA. Plaintiffs counter that SFF did not properly handle and

8    investigate the Aguilars' claim, delayed in making a decision on coverage, forced the

9    Aguilars into litigation when SFF denied coverage, and misrepresented the provisions of

10   the Policy.

11       NRS § 686A.310 established a list of activities that are considered to be unfair

12   practices in settling insurance claims. Plaintiffs make the sweeping argument that SFF

13   violated various provisions of § 686A.310 without specifically identifying the particular

14   provisions. Even setting aside Plaintiffs' vague reference to the statute, the undisputed

15   evidence does not support Plaintiffs' contention of any delay by SFF. The Aguilars

16   tendered the claim to SFF in either February or March 2006. SFF acknowledged the

17   claim in April 2006 and issued a letter on July 20, 2006, denying coverage. A four-month

18   delay in making a coverage determination is not unreasonable. Plaintiffs suggest that

19   SFF acted improperly when it later decided to reverse course and extended coverage to

20   Ernest, but the Court has already determined that it was not unreasonable for SFF to

21   defend and partially indemnify Ernest when there was no coverage under the Policy in

22   the first place. (Dkt. no. 177 at 14.) Plaintiffs' argument that SFF failed to properly

23   investigate the Aguilars' claim appears to be premised on their contention that the Policy

24   should cover the Incident. Plaintiffs cite to SFA's claim adjusters' testimony that Plaintiffs'

25   injuries were not caused by Brad's vehicle. (Dkt. no. 258 at 28.) However, the Court has

26   _____

27       [6]As relevant to the two remaining claims, the main factual difference between the assigned rights from Brad and the assigned rights from Ernest are that SFF reversed its coverage decision with respect to Ernest, the policyholder who apparently talked to

28   SFF's agent about coverage.

1   already determined that the motor vehicle exclusion applies and coverage does not exist

2   under the Policy. That SFA's employees may have believed Plaintiffs' injuries had a link

3   to Brad's vehicle does not render SFF's denial of coverage improper.

4       Plaintiffs claim that SFF forced the Aguilars into litigation in violation of NRS

5   § 686A.310 by denying coverage. Plaintiffs failed to identify the particular subsection of §

6   686A.310 at issue, but Plaintiffs are presumably claiming a violation of subsection (1)(f).

7   NRS § 686A.310(1)(f) provides that it is an unfair practice to compel "insureds to institute

8   litigation to recover amounts due under an insurance policy by offering substantially less

9   than the amounts ultimately recovered in actions brought by such insureds, when the

10  insureds have made claims for amounts reasonably similar to the amounts ultimately

11  recovered." This subsection does not apply here. The Aguilars have not initiated action

12  against SFF to recover amounts due under the Policy. The State Court Action involved

13  Plaintiffs' claims against the Aguilars and others, not the Aguilars' claims against SFF.

14      As for Plaintiffs' contention that SFF misrepresented the policy being sold

15  because the Aguilars had requested an umbrella policy, this argument is tenuous for a

16  number of reasons. Plaintiffs claim that such misrepresentation "constituted

17  'misrepresenting to insureds or claimants pertinent facts or insurance policy provisions

18  relating to any coverage at issue.'" (Dkt. no. 258 at 27.) While Plaintiffs failed to identify

19  the particular subsection of NRS § 686A.310 that SFF violated, this argument quotes

20  subsection (1)(a). The statute of limitations has expired on this claim. NRS §

21  11.190(3)(a) provides that "[a]n action upon a liability created by statute, other than a

22  penalty or forfeiture" must be brought within three (3) years. NRS § 11.190(3)(a),

23  *amended by* 2015 Nev. Stat., Ch. 444, Sec. 4 (Westlaw). SFF notified Brad on July 20,

24  2006, of its decision to deny coverage under the Policy. Plaintiffs did not file this action

25  until August 26, 2009, over three years later.

26      Even setting aside the expiration of the statute of limitations, the undisputed

27  evidence does not support Plaintiffs' contention that SFF made the alleged

28  misrepresentation. Plaintiffs assert that SFF "misrepresented the insurance policy being

sold to the Aguilars as the Aguilars requested an umbrella policy as part of their insurance coverage." (Dkt. no. 258 at 27.) Plaintiffs, however, offer no evidence to support this assertion. Instead, Plaintiffs rely on the testimony of SFF's agent, Mark Scheppmann, that he did discuss an umbrella policy with Ernest, but he could not remember whether the conversation occurred before or after the Incident. (*Id.*) Plaintiffs cite to Scheppmann's deposition transcript — which is over 100 pages in length — but failed to identify the page and line number to support the proffered testimony. (*Id.*) It is unreasonable for Plaintiffs to expect the Court to peruse Scheppman's entire deposition transcript to verify their reference. *See Orr v. Bank of Am.,* 285 F.3d at 775 ("We hold that when a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court may in its discretion exclude the evidence."). However, in reply, SFF pointed to relevant excerpts of Scheppmann's testimony. (Dkt. no. 265 at 14 n.15.) According to Scheppmann, he discussed an umbrella policy with Ernest on July 28, 2003, but the umbrella policy was not added due to the cost involved. (Dkt. no 260 at 147.) Brad testified that he does not recall speaking with Scheppmann about the State Court Action and that his knowledge of the insurance coverage available was based on conversations with his parents. (Dkt. no. 239 at 90, 100.) Ernest testified that he did not recall any conversation with Scheppmann about the Policy after the Incident. (Dkt. no. 241 at 97-98.) Viewing the evidence in the light most favorable to Plaintiffs, the evidence presented does not support even a reasonable inference that the Aguilars requested an umbrella policy but were instead sold a homeowner's insurance policy.

### B.    Misrepresentation Claim

SFF argues that Nevada law bars an assignment of a tort claim such as Plaintiffs' claim for misrepresentation. In response, Plaintiffs appear to argue that the public policy reasons supporting prohibition of assignment of a tort claim do not apply to the assignment of the Aguilars' tort claim to Plaintiffs.

///

1    Under Nevada law, "a meaningful legal distinction exists between assigning the

2    rights to a tort action and assigning the proceeds from such an action." *Achrem v.*

3    *Expressway Plaza Ltd. P'ship*, 917 P.2d 447, 449 (Nev. 1996). The latter is permissible

4    while the former is not. *Id.* As the Nevada Supreme Court explained, "[w]hen the

5    *proceeds* of a settlement are assigned, the injured party retains control of their lawsuit

6    and the assignee cannot pursue the action independently." *Id.*

7    Plaintiffs attempt to distinguish *Achrem* by arguing that they are the injured parties

8    and prohibiting the assignment of the Aguilars' right to assert a misrepresentation claim

9    would result in injustice. However, Plaintiffs confuse the nature of the injury, which is not

10   Plaintiffs' injury suffered as a result of the Incident, but is instead the Aguilars' damages

11   caused by SFF's alleged misrepresentation. As assignees, Plaintiffs stand in the shoes

12   of the assignors — the Aguilars. *See First Fin. Bank, N.A. v. Lane*, 339 P.3d 1289, 1293

13   (Nev. 2014). By assigning the misrepresentation claim, the Aguilars did not retain control

14   of their lawsuit against SFF. Such an assignment is prohibited under Nevada law.

15   Even assuming, as Plaintiffs suggest, that Nevada's prohibition against

16   assignment of a tort claim does not apply for public policy reasons, Plaintiffs'

17   misrepresentation claim suffers from the same infirmities as their UCPA claim. As an

18   initial matter, the Court agrees with SFF that the misrepresentation claim presented in

19   Plaintiffs' opposition briefs appears to have evolved from the allegations in the Complaint

20   and Plaintiffs' responses to discovery requests. The Court will nevertheless address

21   Plaintiffs' misrepresentation claim as presented in their opposition briefs.

22   Plaintiffs contend that "Defendant violated NRS 686A.310 in their representations

23   to the Aguilars as to the insurance policy and/or coverage, in their investigation and/or

24   handling of the claim, and most apparently in their continued failure to advise the

25   Aguilars of their right to independent counsel." (Dkt. no. 258 at 35.) The Court has

26   addressed these contentions in considering Plaintiffs' UCPA claim. In addition, Plaintiffs

27   claim that SFF colluded with SFA by taking actions that eliminated higher coverage and

28   coverage provided under the Policy, SFA and SFF appointed defense counsel they

1   routinely used without disclosing this fact, and SFF misrepresented to the Aguilars that

2   the claim arose out of the use of Brad's vehicle to avoid coverage and that no coverage

3   was available when, in fact, the claim did not arise from Brad's use of his vehicle.

4       A plaintiff asserting misrepresentation must establish the following elements:  (1)

5   the defendant made a false representation, (2) the defendant knew or believed that the

6   representation was false or was made without sufficient information, (3) the defendant

7   intended to induce the plaintiff to act or to refrain from acting in reliance on the

8   misrepresentation, (4) the plaintiff justifiably relied on the misrepresentation, and (5) the

9   plaintiff suffered damages from the reliance. *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588,

10  592 (Nev. 1992).  As to the first element, "the suppression or omission 'of a material fact

11  which a party is bound in good faith to disclose is equivalent to a false representation.'"

12  *Nelson v. Heer,* 163 P.3d 420, 236 (Nev. 2007) (quoting *Midwest Supply, Inc. v. Waters*,

13  510 P.2d 876, 878 (1973)).  Moreover, "a defendant may be found liable for

14  misrepresentation even when the defendant does not make an express

15  misrepresentation, but instead makes a representation which is misleading because it

16  partially suppresses or conceals information." *Epperson v Roloff*, 719 P.2d 799, 803

17  (Nev. 1986).  "The mere failure to fulfill a promise or perform in the future, however, will

18  not give rise to a fraud claim absent evidence that the promisor had no intention to

19  perform at the time the promise was made."[7] *Bulbman*, 825 P.2d at 592.

20      Plaintiffs cannot satisfy the first element of their misrepresentation claim. The

21  Court has found that the evidence does not support Plaintiffs' claim that any

22  misrepresentation was made with respect to the Policy, including SFF's representation

23  that the incident arose out of Brad's use of a vehicle and that coverage does not exist

24

---

25  [7]Plaintiffs argue that the Nevada Supreme Court has recognized a false promise
    of future fact if such misrepresentation caused the wrongful transfer of property. as in the
26  case here. Plaintiffs explain that they settled a personal injury lawsuit and "forwent an
    almost certain judgment in the millions of dollars . . . believing that the Aguilars and State
27  Farm entities had acted in good faith." (Dkt. no. 258 at 38.) However, Plaintiffs again
    confuse their standing as assignees to the Aguilars' right under the Policy. Plaintiffs are
28  not asserting direct claims for misrepresentation against SFF or the Aguilars.

1   under the Policy. Plaintiffs do not explain what action SFF took that eliminated higher

2   coverage under SFA's policy, let alone what representations SFF made that were false.

3   Plaintiffs claim that SFF and SFA appointed defense counsel without disclosing that they

4   were counsel routinely used by SFF and SFA. While failure to disclose may amount to

5   misrepresentation, *Epperson*, 719 P.2d at 803, Plaintiffs failed to identify or offer

6   evidentiary support for SFF's action. Moreover, because SFF denied coverage to Brad, it

7   did not appoint counsel to defend him. To the extent Plaintiffs contend that SFF failed to

8   disclose that independent counsel may be appointed, the failure to disclose does not

9   give rise to a misrepresentation because SFF had no duty to appoint independent

10  counsel.

11      In sum, Plaintiffs have not offered specific evidence to show that a genuine factual

12  dispute exists to preclude summary judgment. *See Bhan*, 929 F.2d at 1409. The Court

13  therefore grants summary judgment on the two remaining claims against SFF.

14  **V.      CONCLUSION**

15      The Court notes that the parties made several arguments and cited to several

16  cases not discussed above. The Court has reviewed these arguments and cases and

17  determines that they do not warrant discussion as they do not affect the outcome of

18  SFF's motions.

19      It is ordered that Plaintiffs' motions for leave to file excess pages (dkt. nos. 255,

20  256) are granted.

21      It is further ordered that State Farm Fire's Motions for Partial Summary Judgment

22  (dkt. nos. 238, 240) are granted.

23      The Clerk is directed to enter judgment in favor of State Farm Fire & Casualty

24  Company.

25      DATED THIS 21st day of October 2015.

26

27      _____

28      MIRANDA M. DU
        UNITED STATES DISTRICT JUDGE